THE KANSAS NATURAL GAS COMPANY V. C. C. HARRIS *et al.*

No. 15,727.    (100 Pac. 72.)

SYLLABUS BY THE COURT.

1. CONTRACTS—*Mineral Lease—Forfeiture—Waiver.* Where the lessee under an oil-and-gas lease violates the provisions of the lease so that the lessor might declare the instrument terminated but does not do so, and afterward the lessor and lessee agree that for a valuable consideration, to be given by the lessee, the lessor will accept the same as a full compliance with the conditions of the lease, and such consideration is given and accepted as stipulated, the transaction will constitute a waiver of the prior violations of the lease and restore it to its original validity and vigor.

2. ——— *Sale of Minerals—Enforcement—Enjoining Interference by Landowner.* Where the holder of a contract for the purchase of the oil and gas in and under certain real estate commences a suit to cancel an outstanding lease on the land, and the owner of the land is made a party to such suit, but no allegations in the pleadings indicate that he has done or intends to do anything adverse to the rights or interests of the plaintiff, and there is no evidence presented which shows any such action or intent, and it does not appear, when the decree is entered, that the plaintiff then has any subsisting interest in the premises, it is error to grant an injunction in favor of the plaintiff and against such landowner restraining him from interfering with the plaintiff in the use of the land for the purpose of exploring for gas and oil.

Error from Montgomery district court; THOMAS J. FLANNELLY, judge. Opinion filed December 12, 1908. Reversed.

STATEMENT.

THIS is a suit to cancel an oil-and-gas lease. Prior to July 5, 1899, Jennie F. Evans and her husband were the owners of the land described in the lease. On that day they executed a lease to the Independence Gas Company for a term of ten years, and as much longer as gas or oil might be found in paying quantities. It was stipulated in the lease, in substance, that the lessee should commence operations under the lease within three months, or, in case of failure to do so, the lease might be kept alive by furnishing gas at the residence of M. Rizer in Independence sufficient for two stoves and two lights, in which case the lease should be binding so long as gas was so furnished.

Gas was furnished as stipulated until about September, 1901, when Rizer leased his residence and resided with the tenant. After this the company refused to furnish gas free, and required payment therefor from the tenant. Subsequently Evans and wife, the grantors of the mineral lease, became the owners of the Rizer residence property and demanded that gas be furnished there for them, which the company refused to do.

The mineral lease was duly recorded September 28, 1899, but was not properly indexed, and therefore escaped the attention of those who subsequently dealt with the land. On August 18, 1903, the Independence Gas Company assigned this lease to the Consolidated Oil and Gas Company, and on March 9, 1904, the Independence Gas Company and the Consolidated Oil and Gas Company assigned it to R. M. Snyder, and on June 14, 1904, it was assigned to the Kansas Natural Gas Company, which now claims to be the owner thereof. On December 11, 1902, Jennie Evans and her husband, the lessors in the aforesaid mineral lease, conveyed the land to G. H. and Dollie Dow, who have ever since been the owners thereof. In October, 1903,

the Dows requested the lessees in writing to furnish gas to them on the leased premises. The request reads:

*"County of Montgomery, State of Kansas, ss.:*

"We hereby request of the Consolidated Gas, Oil & Manufacturing Company, successors to the Independence Gas Company, to furnish gas to us on the premises on which the within lease is granted, instead of Independence, as agreed when written. We agree to accept the same in satisfaction of said agreement. It is understood we are now the owners of the premises described in this lease. Witness our hands and seals this 19th day of October.                    G. H. DOW.

DOLLIE DOW."

The lessees complied with this request and have since been furnishing gas as requested.

On February 27, 1903, the Dows entered into a contract of sale with the plaintiff, C. C. Harris, for all the oil and gas in and under the lands described in the aforementioned lease. The conditions of the contract, in part, read:

"In consideration of the sum of one dollar, the receipt of which is hereby acknowledged, C. H. Dow and wife, Dollie Dow, of Independence, Kan., of the first parties, hereby grant unto C. C. Harris, second party, all the oil, gas and other minerals found in and under the following-described premises, together with the right to enter thereon at all times for the purpose of drilling and operating, and to erect and maintain all buildings and structures, and the exclusive right to lay all pipes or sluices necessary for the production and transportation of oil, gas or other minerals taken from said premises. Excepting and reserving, however, to the first party one-eighth part of all oil or other minerals produced and saved from said premises, to be delivered in pipe-line by the second party. . . . If no well is commenced within six months on the above land, then this grant shall become null and void, unless second party shall pay annually thereafter in cash the sum of one dollar per acre on said land leased. The same to be deposited to the credit of the first parties in the Commercial National Bank, at Independence, Kan."

Prior to complying with the request of the Dows to

furnish gas to them on the leased premises the lessees had done nothing in the way of developing the premises, and had not in any respect complied with the provisions of the lease, and by reason of their failure in this respect had forfeited their rights thereunder. After the natural gas company had commenced furnishing gas to the Dows, and thereby, as they claim, renewed the life of the lease, it caused a well to be drilled on the leased premises, which proved to be a good gas-well. Thereupon C. C. Harris commenced this suit to cancel the lease, in order to protect his rights under the contract made by him with the Dows. Defendants John Smith and J. B. Swan are part-owners with C. C. Harris, and his and their interests are identical. The Dows own the leased premises in fee. All the other defendants hold under or with the Kansas Natural Gas Company. The controversy is chiefly between the persons interested in the Evans lease and those claiming under the Harris contract. At the expiration of six months after the execution of the Harris contract, no well having been commenced, the stipulated rent was paid up to August 27, 1906.

The parties were all brought into court, issues were formed, and the case was tried on the merits. Although an equity case, a jury was called, to whom several questions of fact were submitted and answered. The court adopted and entered a decree upon these findings:

"(1) Ques. Did the Independence Gas Company lay pipes to within fifty feet of the residence of M. Rizer in Independence and furnish gas for two stoves and two lights? Ans. Yes.

"(2) Q. If 'Yes,' then did the Independence Gas Company or any of the subsequent owners of the lease cease furnishing gas for two stoves and two lights in lots 14, 15 and 16, block 40, the residence of M. Rizer, in Independence? A. Yes, according to terms of lease.

"(3) Q. If you say that the furnishing of gas for two stoves and two lights within fifty feet of the residence of M. Rizer, in Independence, in lots 14, 15 and

16, block 40, was discontinued, then when and why was it discontinued? A. Soon after Layton occupied Rizer property; because Rizer residence was occupied by tenant.

"(4) Q. If you say that the Independence Gas Company or any of the subsequent owners of the lease ceased to furnish gas for two stoves and two lights to lots 14, 15 and 16, block 40, the residence of M. Rizer, in Independence, then was it the intention of the Independence Gas Company or the subsequent owners of the lease to forfeit and abandon the lease? A. Yes.

"(5) Q. Did Dow and wife know of the existence of the Evans lease at the time of their making the lease to C. C. Harris? A. No."

The court found against the validity of the Evans lease, and in favor of the validity of the Harris contract, and entered a decree canceling the lease and perpetually enjoining all the adverse parties, including Dow and wife, from interfering with Harris in the exercise of his rights under the contract made by him with the Dows.

The Kansas Natural Gas Company filed a petition in error in this court, and Dow and wife a cross-petition in error. They each complain of the decree of the trial court, and ask for a reversal.

*F. J. Fitch, S. H. Piper, Eugene Mackey,* and *John J. Jones,* for plaintiff in error; *Jones & Reid,* and *Mackey & Scully,* of counsel.

*A. M. Keene,* and *J. B. Tomlinson,* for defendants and cross-petitioners in error G. H. Dow *et ux.; Keene & Gates,* of counsel.

The opinion of the court was delivered by

GRAVES, J.: The facts found by the court indicate that the lessees under the Evans lease violated the provisions thereof to such an extent that the lessors had a right to declare a forfeiture and terminate the lease. The language of the instrument itself, however, does not appear to be such as would work a termination

thereof absolutely, merely because of a breach of its provisions. In such a case it seems to be the rule that some affirmative action on the part of the lessor is necessary to accomplish a forfeiture. In volume 24 of the Cyclopedia of Law and Procedure, at page 1359, it is said:

"The occurrence of a ground of forfeiture does not of itself work a forfeiture. A condition subsequent in a lease that upon neglect of the lessee to perform his covenants the lease shall determine and be void does not render the lease absolutely void upon a default of the lessee, but merely voidable at the election of the lessor, so that if he elects to waive the forfeiture the lessee is bound as though there had been no breach of condition. So, where the statute declares that the lease is forfeited on the occurrence of certain events, it merely means that it may be forfeited by the lessor on such occurrence."

(See, also, *Alexander v. Touhy,* 13 Kan. 64.)

While a lessor may terminate a lease when facts exist which give him that right, the law does not require him to do so. If he prefers to have the lease continue, he may waive the right of forfeiture. The waiver may be in writing, or it may be evidenced by conduct which indicates such a purpose. When Dow and wife made the written request upon the gas company to lay pipe to, and furnish gas at, the leased premises, neither party had declared to the other that the lease was at an end, and neither party at that time seemed to regard it as terminated. It was competent then for them to renew it, and competent for the lessors to waive all past delinquencies on the part of the lessees, and we think the written request and the compliance therewith had that effect. Whatever the prior conditions may have been, the parties by this act renewed the lease and infused it with its original vigor. Nothing occurred after this waiver of the lessors to impair the vitality of this instrument, and at the time of the trial the rights of the lessees thereunder were the same as when they first began furnishing gas in

compliance with its provisions. The district court erred, therefore, in declaring it at an end and ordering that it be canceled on account of delinquencies which had been waived.

The fact that the filing of this lease was not properly indexed by the register of deeds has not been suggested as a fact which in any manner affects its validity. It was otherwise duly recorded, and therefore imparted notice as fully as if it had been properly indexed. (*Poplin v. Mundell,* 27 Kan. 138; *Lee v. Bermingham,* 30 Kan. 312, 1 Pac. 73.)

The contract between defendants G. H. and Dollie Dow and the plaintiff, C. C. Harris, provided in substance that if no well was commenced within six months the instrument should become void, unless the party of the second part should pay annually thereafter in cash the sum of one dollar per acre on the leased lands. No well was commenced within the time stated, and to save the life of the contract Harris paid the stipulated rent up to August 27, 1906. The trial of the case ended July 3, 1906, but the hearing of motions delayed the rendition of final judgment until October 16, 1906.

The court in its decree recites specifically, as if to emphasize the fact, that this contract between Harris and the Dows was a good and valid and subsisting and binding contract, and that the plaintiff had complied with its conditions on his part, and that the same was in full force and effect on *July 3, 1906;* and again it is recited:

"And it is further by the court considered, ordered, adjudged and decreed that at the time of the trial of this action, to wit, *July 2 and 3, 1906,* and at all times *theretofore,* the plaintiff had complied with the obligations and conditions of the said grant . . . executed and delivered to the plaintiff by the said defendants G. H. Dow and Dollie Dow, and that the said grant and contract . . . was in full force and effect on July 3, 1906; and it is further considered, ordered, adjudged and decreed by the court that on said date said grant was in full force and effect, and that said plain-

tiff's right to the possession of said premises under his grant was, on said *July 3, 1906,* good, valid, binding and subsisting and in full force and effect, and that for the purposes therein named the right to produce the oil, gas and minerals in or under said premises by the terms of said grant . . . is declared to be in plaintiff, subject, however, to the rights and privileges of the said Dow and Dow under said grant, and said defendants and each of them, except Smith and Swan, are hereby enjoined from interfering with the plaintiff in the possession of the gas-well thereon and the production of gas and oil under the terms of the contract."

It appears from this that the court, in October, 1906, entered its decree, based wholly upon a contract which, though valid and subsisting on July 3, 1906, was certain by its own terms to lapse and become void August 27, 1906, unless continued by the act of the plaintiff. There are no facts in the evidence or elsewhere in the record to indicate that the plaintiff did anything to prevent this lapsing of the contract, or to show that on the day the decree was entered in favor of the plaintiff he had any subsisting rights in the premises whatever. Even the presumption which is usually indulged in favor of a judgment is swept away here by the fact that the decree shows upon its face that the contract upon which it rested had already expired, unless its life had been preserved by payment of the stipulated rental on or before August 27, 1906. The burden of proof was upon the plaintiff to establish this fact before he was entitled to a decree. No such showing was made.

Upon this situation, Dow and wife, the owners of the land, were enjoined from interfering in any way with Harris in producing gas and oil upon said premises. No limitation is placed upon Harris's right to enjoy this privilege; it is not provided in the decree that his right in the future will depend upon his performance of the conditions of the contract on his part. The words "subject, however, to the rights and privileges of the said Dow and Dow under said grant" may have

been intended to meet this objection, but they are insufficient; they amount to no more than to say that so long as Harris produces oil, gas or other minerals from the land of Dow and Dow he must pay to them the royalties and rents stipulated in the contract. This is too narrow. Dow and wife are the owners of the land; they have rights in the premises not enumerated in the contract. The purpose of that instrument was to state the rights of Harris and not to limit those of the grantors. Dow and wife own everything in and about the premises not conveyed to Harris. The rights of Harris, whatever they may be, do not need the protection of an injunction against Dow and wife, as they have never sought to question his rights or to restrict him in the exercise of any of the privileges claimed by him. No such complaint was made against them in the pleadings, and the evidence does not show any reason whatever for imposing any such restraint upon them.

We think the injunction against Dow and wife erroneous, first, because no complaint is made against them for having done, or intending to do, anything toward encroaching upon or limiting the rights of Harris; second, the evidence entirely fails to show any reasonable cause for such an order; third, it does not appear from the record that at the time the decree was made Harris had any rights whatever in the premises to be protected.

The entire decree is reversed, and the cause remanded for a new trial.