Venable v. Bradbury.

---

No. 23,685.

GILBERT M. VENABLE, *Appellee*, v. EDWIN H. BRADBURY et al., *Appellants*.

SYLLABUS BY THE COURT.

1. ACTION TO SET ASIDE CONVEYANCES—*On Ground of Fraud—No Remediable Fraud Proven.* The plaintiff had received a conveyance of land from his father, and there was a question as to whether a fee-simple title was conveyed or only a life estate. Plaintiff had received legal advice that only a life estate was conveyed and believing that to be the extent of his interest, he executed a life lease to his brother-in-law and conveyed the legal title thereof to the children of his brother-in-law, for a substantial consideration, but which plaintiff claims was much less than its value. Before purchasing plaintiff's interest the brother-in-law had obtained a letter from a lawyer stating that in his opinion the plaintiff held an absolute title to the land. The brother-in-law did not inform the plaintiff of the contents of this letter before making the purchase. Eleven years afterwards plaintiff learned of the letter and legal opinion and brought an action to set aside the lease and deed upon the ground that the withholding of the legal opinion was actionable fraud which vitiated the transfers. *Held,* that the silence of the purchaser and withholding of the legal opinion which he had received as to the state of plaintiff's title, the means of information being equally open to both parties, did not in the absence of confidential relations constitute remediable fraud.

2. SAME—*No Confidential Relationship Between the Parties.* There was no technical confidential relation between the parties and it is held that there was nothing in the circumstances of their associations which raised a confidential relationship, making it the duty of the brother-in-law to disclose the opinion he had received from a third party as to the doubtful title.

3. SAME. The fact that plaintiff had formerly lived in the family of his brother-in-law and was on friendly terms with him did not raise a confidential relationship.

4. SAME—*Intemperate Habits of Plaintiff.* No invalidity can be predicated on the intemperate habits of the plaintiff where it appears that he was not

intoxicated or incapable of understanding what he was doing when the transfers were made.

Appeal from Chase district court; WILLIAM C. HARRIS, judge. Opinion filed June 10, 1922. Reversed.

*Z. T. Hazen, J. B. Larimer,* and *W. Glenn Hamilton,* all of Topeka, for the appellants.

*H. E. Ganse, Gilbert Frith, O. S. Samuel,* all of Emporia, and *J. Q. Stratton,* of Los Angeles, Cal., for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action by Gilbert M. Venable, jr., to set aside a life lease of land given to Edwin H. Bradbury, and a deed made by him to two children of Bradbury. The plaintiff also asked to have the title to the land quieted in him and for the construction of the deed given to plaintiff by his father. The action resulted in a judgment setting aside the life lease and deed, from which defendants appeal.

The deed executed by Gilbert M. Venable, sr., to plaintiff was executed on September 28, 1888. It was in the ordinary form of general warranty except that it contained a provision that it was "expressly understood by the parties hereto that the party of the first part shall during his natural life have exclusive control and management of the real estate described, and may at any time sell and convey the same with the consent of the party of the second part, and it is further provided and expressly understood by and between the parties hereto, that if the party of the second part shall die without heirs begotten of his body, the real estate herein described shall all revert to the party of the first part, his children or their heirs if they be dead." Venable, sr., had two children, the plaintiff and a daughter, Ada, who married Edwin H. Bradbury. She died in 1899, leaving two children, Gilbert V. Bradbury and Dorothy Bradbury, who are named as defendants. Venable, sr., died in 1894, six years after the deed to his son was executed. During his lifetime he retained possession and control of the property, and his son being addicted to the excessive use of intoxicating liquor, and a spendthrift, led the father, it is contended, to limit the conveyance to a life estate only. That appears to have been the interpretation placed upon the deed by the son as well as his father, and also by the other parties concerned. From the death of his father in 1894 to 1901, the son undertook to control the land, but he was un-

able to make it yield enough to pay taxes and maintain the property. On March 1, 1901, he leased it to Bradbury for three years at a stipulated rental of twenty-five dollars per month and possession was taken by the lessee. This lease was renewed for two years longer, expiring in 1906, and there was also a third lease expiring 1909. The rentals were paid to the plaintiff, and Bradbury continued in the control and possession of the land up to the time of the execution of the instruments sought to be set aside in this action. In a letter written by an attorney in May, 1908, Bradbury was advised that the deed executed by Venable, sr., to his son conveyed to him a title in fee simple. In September, 1908, Bradbury entered into negotiations with plaintiff for the purchase of his interest in the land with the result that plaintiff executed the life lease of the land to Bradbury, and a deed in which his wife joined, conveying the title of the property to Bradbury's children. The consideration for these instruments was the payment by Bradbury to plaintiff of sixty dollars on the first day of each month during the life of the plaintiff. The stipulated payments were made as they fell due from September, 1908, until about the time this action was begun in 1920. Sometime before the execution of the instruments the plaintiff obtained the opinion of an attorney as to the title or interest he held in the land, who advised him that he only held a life interest, and that the property would descend to the heirs as provided in the deed. Plaintiff alleged and contends that the life lease and deed were fraudulently obtained and were void for the reason that Bradbury had concealed from him the opinion given by his lawyer in 1908 with respect to the title. His claim is that Bradbury took advantage of the confidential relations existing between them, and with the knowledge given him by the attorney as to his title, he had procured the transfers for a monthly annuity of sixty dollars when the property transferred was actually worth $20,000. Plaintiff had lived with Bradbury from 1894, when his father died, until 1899. He had been employed by Bradbury a short time in 1896, and again for a short period in 1906. Plaintiff drank heavily most of the time from 1900 to 1909, and often lost positions he had obtained because of his intemperate habits. In 1909, he gave up these habits and has been a total abstainer since that time. Friendly relations existed between plaintiff and Bradbury for twenty-five years, the period from the death of plaintiff's father until this action was brought. It appears

that he was in the employ of Bradbury in 1920, as a bookkeeper, and while rearranging the papers in a desk found and read the letter of Bradbury's attorney written in May, 1908, expressing the opinion that the title to the land was in the plaintiff. He then left the defendant's employment and instituted the action.

The defendants contend that as plaintiff had for twenty-five years acquiesced in the view that he held only a life estate in the property, and did not question the rights of inheritance of Gilbert V. and Dorothy Bradbury in it, and also that he had sold his interest in it more than eleven years before challenging the transfers made, and further, that the annuity to be paid him of $720 during his life, the expectancy being twenty-six years, and which represented an aggregate of $18,726, the actual cash value of the land, the ground relied on by plaintiff for relief did not warrant the cancellation of the lease and deed, nor afford any basis for equitable relief. As already indicated the ground for setting aside the lease and deed is the fact that Bradbury did not inform plaintiff as to the opinion of the lawyer respecting the title given to defendant about three months before the execution of the instruments, and that with the information derived from the letter he dealt with the plaintiff on the theory that the extent of plaintiff's interests was a life estate. Did the withholding of the opinion expressed by Bradbury's lawyer constitute such fraud as will justify a cancellation of the deed and lease? The opinion related only to a question of law, the legal effect of an instrument of conveyance. It was only an opinion and one which did not change the title of the plaintiff or affect his existing rights. It had no more effect than the legal opinion secured by plaintiff from another lawyer that he held only a life estate in the land. The effect of the recitals in the deed was a debatable question of law upon which the opinions of the attorneys were given. Both opinions were based upon the recitals of the instrument, and these were equally available to both parties. That it was a doubtful question was shown by the fact that capable lawyers placed different interpretations upon the same instrument. As between the parties dealing with each other, an expression of opinion not amounting to a representation does not constitute actionable fraud. It has been said that—

"The vendor cannot be held responsible where he merely expresses an opinion as to the legal effect of known facts and muniments of title or an opinion as to the validity of his title." (12 R. C. L. 274.)

Here the opinion withheld was that of a stranger. It was not used

to induce action, and the case is not like one where one party used a legal opinion to procure another to enter into a contract or to execute a conveyance. Everyone is presumed to know the law, his rights and the state of his own title to property. The plaintiff had the same means of knowledge of his rights and interest in the land that the defendant had, and had previously used the means employed by defendant of obtaining a legal opinion as to his interest in the land. It has been said:

"The presumption is, that every person is acquainted with his own rights, provided he has had a reasonable opportunity to know them. And nothing can be more liable to abuse than to permit a person to reclaim his property upon the mere pretense that at the time of parting with it he was ignorant of the law acting on his title." (1 Story's Equity Jurisprudence, 14th ed., 173.)

In a case where there was more than silence, but representations by the grantee to the effect that the title of the grantor had been divested by legal proceedings, it was held:

"The means of information were equally open to both parties. The grantor also consulted an attorney at law concerning his title, and executed the deed supposing that he had no title. *Held,* that he was not entitled to recover for the alleged fraudulent representations." (*Cobb v. Wright,* 43 Minn. 83, syl.)

(See, also, *Robins v. Hope,* 57 Cal. 493; *Williams, etc. v. Beazley,* 26 Ky. 578; *Boddy v. Henry,* 113 Iowa, 462; *Boileau v. Records & Breen,* 165 Iowa, 134; *Du Moulin v. Board of Education,* 124 N. Y. Supp. 901; *Brown v. Lead & Zinc Mining Co.,* 194 Mo. 681.)

Plaintiff contends that if silence of defendant as to the opinion of his lawyer would not of itself operate to impeach the transaction, the confidential relationship existing between the parties made the withholding of the opinion an actionable fraud, which warranted the setting aside of the lease and deed. As has been seen the only relationship between them was that of brothers-in-law. There being no blood relationship, the mere fact that the plaintiff lived in the family of defendant and was on friendly terms with him cannot be regarded as raising a confidential relationship. Plaintiff had left Bradbury's home and lived apart from him for about five years before the transaction in question, and nothing is seen in their relations or the circumstances which approaches a confidential or fiduciary relationship, one which under the law made it the duty of Bradbury to disclose mere opinions that he had received from third parties. In Bigelow on Fraud, it is said:

"The mere fact however that a party was once in a relation of confidence to another, and that he still continues to be a trusted friend, appears not to be

enough; a sale to such an one will be valid though the price was to his knowledge, and not to that of the vendor, inadequate, being of property of which he had formerly for many years had special charge as a servant. It need hardly be said that the fact that a party dealing with another has great confidence in him and may be easily influenced by him, does not raise the technical confidential relation." (Bigelow, The Law of Fraud, 366.)

If the parties had been brothers in fact, that without more would not have created a relation of trust and confidence which would have required a disclosure of the opinions of strangers as to the effect of the deed. In *Bacon v. Soule,* 19 Cal. App. 428, it was said:

"In the absence of a confidential relation, the defendants were under no obligation to volunteer information to the plaintiff which was as readily accessible to him as it was to the defendants; and as 'the law will not undertake the care of persons who will not, with the means at hand, take care of themselves,' the mere silence of the defendants cannot be construed to be a fraudulent concealment sufficient to support an action for fraud." (p. 439.)

If the defendant had been the agent of plaintiff, or had stood in a confidential or fiduciary relation to him, a full disclosure of all material facts relating to the subject of their dealings would have been required. But there was no actual or assumed relation of confidence between them. The state of the title had been brought to the attention of both, each had obtained independent advice concerning it, and the effect of the deed and the interpretation of its terms still remains a matter of doubt. The conflicting legal opinions which the parties had received in no way changed the status of the title, and the silence of the defendant related, as we have seen, to a question of law as to which the means of information was equally available to both parties. On the controlling facts as disclosed in the testimony by plaintiff, we conclude the defendant was under no legal obligation to inform the plaintiff as to the advice given him by his attorney.

Considerable is said about the intemperate habits of plaintiff, but there is no contention nor anything tending to show that he was intoxicated or lacking in capacity to understand what he was doing when he made the transfers based on what must be regarded as a substantial consideration. The conclusion reached makes it unnecessary to place a construction upon the deed executed by Venable, sr., to the plaintiff, or to consider the other questions discussed by counsel. Upon plaintiff's evidence it must be held that he was not entitled to the relief sought, and therefore the judgment is reversed, and the cause remanded with the direction to enter judgment for the defendants.