### No. 39,419

ANN CRAWFORD and JAMES W. JORDAN, Special Administrator of the Estate of Joseph B. Crawford, Deceased, *Appellants,* v. JOSEPH H. CRAWFORD, ELIZABETH CRAWFORD SKINNER, FREDERICK W. CRAWFORD and CHARLES D. CRAWFORD, *Appellees.*

(271 P. 2d 240)

Opinion filed June 12, 1954.

*Karl V. Shawver, Jr.*, of Paola, argued the cause, and *Harry G. Wiles*, of St. John, and *Albert Thomson* and *Al Lebrecht*, both of Kansas City, Missouri, were with him on the briefs for the appellants.

*James A. Moore*, of Kansas City, Missouri, argued the cause, and *Hubert B. Sanders*, of Stafford, was with him on the briefs for the appellees.

The opinion of the court was delivered by

PRICE, J.: This was an action by the widow (joined by the Kansas administrator of the estate of Joseph B. Crawford, deceased, as a nominal plaintiff) to set aside a deed executed by decedent a few weeks prior to his death. The defendant grantees are the adult children of deceased by a former marriage.

Briefly summarized, it may be said the second amended petition alleged substantially the following:

That on or about January 10, 1953, plaintiff's stepchildren, in furtherance of a fraudulent scheme and conspiracy to defeat her marital rights in property owned by their father, obtained the latter's signature on a warranty deed conveying to them certain mineral interests owned by him and located in Stafford County; that at the time his signature was obtained he was physically and mentally incompetent due to the effects of illness, alcohol and medicine; that it was obtained without consideration; and that at the time and place he was so completely under the undue influence of his children that the execution of the deed was not his free and voluntary act; that subsequent to the death of their father, which occurred on February 14, 1953, defendants, without authority, fraudulently altered the description of the property originally inserted in such deed, and thereafter caused it to be recorded in the office of the register of deeds of Stafford County; that the original description contained in the deed signed by plaintiff's husband was ambiguous and insufficient to describe with certainty any specific property in Stafford County, or elsewhere, and that such instrument was therefore void and of no force or effect.

The prayer was for a judgment finding the deed as originally executed, and as subsequently altered, to be void and of no force or effect, and for a further order finding the property attempted to be conveyed thereby to be assets of the estate of such decedent.

Defendants' answer and cross-petition denied all wrongdoing and fraud attributed to them, denied the incompetency of their father at the time and place in question, denied allegations of undue influence on their part, and alleged they were owners of the fee title

to and were in peaceful possession of the property in question by virtue of the deed attacked by plaintiffs, and prayed for judgment quieting their title to such property.

We thus have a situation in which it is claimed that adult children of grantor by a former marriage took advantage of his alleged incompetent condition in order to secure a deed to his Stafford County property and thus deprive their stepmother, who was grantor's fourth wife, of her marital rights therein.

Following a trial upon the issues thus joined, the court rendered judgment for defendant grantees, and plaintiffs have appealed.

At the trial certain facts were stipulated by the parties, and considerable evidence, both oral and by deposition, was introduced. A fair summary thereof is as follows:

In January, 1953, Joseph B. Crawford was seventy-two years of age. For a number of years he had been addicted to the excessive use of alcoholic liquor and had been in and out of hospitals undergoing treatment for mental and physical disorders resulting therefrom. In August, 1952, plaintiff became his housekeeper and manager of an apartment building in Kansas City, Missouri, purchased by him following their introduction by one Richardson, the latter being active in the purchase negotiations. On October 28, 1952, plaintiff and Crawford were married. His children, defendants herein, were not present at the wedding. Richardson joined them on their wedding trip to Texas. She and Richardson were active in the purchase by Crawford of a Missouri farm, title to which was taken in the name of plaintiff and Crawford. .

On Saturday morning, January 10, 1953, the three sons of Mr. Crawford came to his apartment for him. He left with them and, after being taken to a barbershop for a haircut and shave, accompanied them to the home of one of the sons, at which place his daughter and daughters-in-law were present. Following a general family discussion of property matters, an attorney with whom Crawford was acquainted was called to the home. He and Crawford discussed business matters and Crawford expressed the desire to make a will giving his wife a child's share of his property. He also stated that he wanted to convey all of his property, including mineral interests, located in Stafford County, Kansas, to his four children, these defendants. The attorney then prepared a will in accord with Crawford's expressed desire, and prepared a deed in which the four children were named as grantees. Inasmuch as the legal descrip-

tions of his Stafford County properties were not then available, the following language was typed in the deed in order to show what properties were being conveyed:

"Mineral rights and oil royalties on properties heretofore conveyed by me and lots in the town of Stafford.

"Grantor expressly reserves a life estate in all of the property hereby conveyed."

A notary public who was called in took the acknowledgment of Crawford's signature on the deed.

Some drinking took place at the home of Crawford's son that day, but the evidence was to the effect that prior to signing the deed Crawford had only one whiskey highball, and that during the entire discussion and transaction he was sober and in possession of all of his faculties. However, there was evidence to establish that during the evening and night, after he had returned to his own apartment, he was intoxicated and in a confused condition.

The next morning two of the sons and the daughter went to their father's apartment, at which time they explained to plaintiff the execution and contents of the deed and gave her a copy of the will.

Between January 10th and his death five weeks later, on February 14th, Crawford underwent treatment for mental disorders.

In the meantime the deed had been presented for record in the office of the register of deeds of Stafford County, but that official had returned it for a more detailed description of the property conveyed.

This action was commenced on February 16, 1953, the day of Mr. Crawford's funeral.

About a month after his death an attorney representing defendant grantees inserted in the deed, immediately following the language quoted, *supra*, the detailed legal descriptions of four properties in Stafford County owned by Crawford on the date it was executed. These detailed descriptions covered royalty interests on three separate tracts and also included town lots which Crawford had previously contracted to sell but the deal for which had not been consummated.

In their brief plaintiffs argue three questions. The first is that the court erred in its general finding that the grantor was mentally competent at the time of execution of the deed. Plaintiff widow of course was not present at the time and her evidence on this question consisted almost entirely of medical testimony and hospital records

which clearly established the fact that on numerous occasions, both before and after the day in question, Crawford was undergoing treatment for mental and physical disorders allegedly brought on by the excessive use of alcoholic liquor over a period of years. However, assuming that evidence to be true, the matter still resolves itself into the precise question whether *at the time he signed the deed* Crawford was competent to understand the nature of the transaction. All of the evidence directly bearing on the issue was that he was competent and that at the time was not under the influence of liquor. In *Venable v. Bradbury,* 111 Kan. 495, 207 Pac. 647, it was held:

"No invalidity can be predicated on the intemperate habits of the plaintiff where it appears that he was not intoxicated or incapable of understanding what he was doing when the transfers were made." (Syl. 4.)

In the exhaustive opinion in *Ismert-Hincke Milling Co. v. Ismert Estate,* 136 Kan. 617, 16 P. 2d 521, the following rule was stated:

"The ultimate legal standard of mental capacity to execute a will or promissory note is competency to know and understand the transaction." (Syl. 1.)

In the more recent case of *Mills v. Shepherd,* 159 Kan. 668, 157 P. 2d 533, the rule was thus stated:

"The test of mental capacity to contract or to convey property is whether the person possesses sufficient mind to understand, in a reasonable manner, the nature and effect of the act in which he is engaged." (Syl. 1.)

Tested by the foregoing rules, we have no difficulty in agreeing with the trial court that at the time he signed the deed Crawford was not incompetent.

The next question raised by plaintiffs is whether the trial court properly found that the deed, for which there was no consideration, was executed without undue influence, in view of the undisputed testimony that the grantees prepared the deed, arranged for the attorney, obtained the notary public, conveniently provided the Kansas forms, and that one of the grantees occupied a confidental relationship to the grantor who was given no independent advice at the time, and in this connection reliance is had upon a number of our decisions, some of which are cited with approval in the recent case of *Henks v. Panning,* 175 Kan. 424, 264 P. 2d 483, to the effect that persons enjoying a confidential relationship with the grantor of gifts *inter vivos* have the burden of showing that such gifts were made without undue influence.

We adhere to such rule, but the trouble, from plaintiffs' stand-

point, is that the facts established by the evidence do not bring this case within its application. No useful purpose would be served by a detailed recital of the evidence. It is sufficient to say that the hint of the existence of a confidential and fiduciary relationship between one of the sons and his father is simply not borne out by the evidence. There is nothing in the evidence to establish that the father looked to his adult children for advice and counsel on business matters so as to create the existence of a confidential relationship as that term is used and defined in our decisions dealing with the subject. (*In re Estate of Schippel,* 169 Kan. 151, 163, 218 P. 2d 192.)

And neither can the contention with respect to alleged undue influence be sustained. Entirely aside from the fact that power, motive and opportunity to exercise undue influence do not alone authorize the inference that such influence was in fact exercised (*Ginter v. Ginter,* 79 Kan. 721, 101 Pac. 634, 22 L. R. A. (NS) 1024), all of the evidence directly bearing on the point clearly established that the execution of the deed was the free and voluntary act of the father.

The last question raised by plaintiffs is whether the court properly held that the deed signed by grantor, and which purported to convey mineral rights on properties "heretofore conveyed by me," could be altered after his death by the grantees so as to include property which had not been "heretofore conveyed" by him.

In this connection it is to be recalled that following Crawford's death an attorney for grantees inserted in the deed the legal descriptions of the four properties owned by grantor in Stafford County. Three of these descriptions covered mineral interests on separate tracts, while the fourth covered town lots.

It was stipulated that the land on which two of the mineral interests were located had been "heretofore conveyed" by Crawford, but that the "royalty interest in . . . Section 8, . . . was at the time of his death exactly as he had inherited it from a former deceased wife and had never been 'heretofore conveyed' by him."

Before treating the specific question presented we refer to the general rule concerning the sufficiency of descriptions contained in deeds.

In 26 C. J. S., Deeds, § 30, pp. 210, 211, it is said:

"In general any description in a conveyance of the property is sufficient if it identifies the property, or if it affords the means of identification, as by extrinsic evidence.

. . . . . . . . . . . . . .

"Generally, therefore, any description is sufficient by which the identity of the premises can be established, or which furnishes the means of identification."

To the same effect, see 16 Am. Jur., Deeds, § 262, p. 585, and § 272, pp. 591, 592.

That the foregoing general rule is followed in this state is established by what was said and held in *Bryant v. Fordyce,* 147 Kan. 586, 590, 78 P. 2d 32.

The form of deed executed by Crawford was not in "blank." It clearly conveyed his mineral interests on properties located in Stafford County "heretofore conveyed" by him, and lots in the town of Stafford. The evidence was clear that by the execution of the deed he intended to convey *all* of his holdings in Stafford County, reserving to himself a life estate. Specific identification of those properties was a simple matter merely by reference to the public records. Plaintiff herself had no difficulty in identifying them by their legal descriptions when she filed the action. The subsequent insertion of the detailed legal descriptions, which the evidence showed was authorized by grantor, was not such an alteration as to void the conveyance. And with respect to the mineral interest in section 8 (referred to by the parties as tract "C"), we are advised by defendants, and it is not disputed by plaintiffs, that it, like the other two interests, had been acquired by Crawford through the estate of a prior deceased wife, and that only the three interests remained. For all the record shows the *fee* to such tract may have been previously conveyed by him and his former wife. In any event, inherent in the trial court's judgment is the finding that such tract was in the same status as the other two, and it has not been made to appear the court erred in so holding.

This was essentially a fact case. The trial court resolved all questions of fact in favor of defendants. There was substantial evidence to support the general findings. They, in turn, support the judgment rendered. No error being shown, the judgment is therefore affirmed.