(562 P.2d 127)

No. 48,327

DALE A. LUTHI and MARCIA LUTHI, *Appellees*, v. JOHN R. EVANS and J. R. BURRIS, *Appellees*, and INTERNATIONAL TOURS, INC., a corporation, *Appellant*.

Opinion filed March 18, 1977.

*Stanley E. Toland* and *Clyde W. Toland* of Toland and Thompson, of Iola, for the appellant.

*Harold G. Forbes* of Forbes & Pohl, of Eureka, for the appellee, J. R. Burris.

SPENCER, J.: Plaintiffs, as successors in title of the original lessors, brought suit to cancel an oil and gas lease (known as the

Kufahl lease) on land in Coffey County, Kansas. Defendant John R. Evans is the undisputed owner of the lease in zones above the Mississippi lime formation as well as a small overriding royalty interest in the zones below. Defendants J. R. Burris (hereinafter Burris) and International Tours, Inc. (hereinafter Tours) each claim ownership of the lease in the zones below the Mississippi lime (deep zones), subject to the Evans interest, from a common assignor. The trial court quieted title as to the deep zones in Burris and granted plaintiffs cancellation of the lease, subject only to test drilling by Evans and Burris in their respective zones within six months after the date judgment became final. Tours has appealed from the judgment quieting title in Burris. No issue is raised in this appeal as to plaintiffs Luthi or as to the defendant Evans, or as to the judgment of conditional cancellation.

This matter was submitted upon agreed facts as set forth in the pre-trial memorandum. The trial court concluded that Burris was an innocent purchaser and acquired title by virtue of the fact that the recording of the prior assignment to Tours was not sufficient to give notice under the recording statutes.

By written instrument designated "Assignment of Interest in Oil and Gas Leases" dated February 1, 1971, acknowledged February 5, 1971, one Grace V. Owens, who was then the owner of the working interest in the Kufahl lease subject only to the overriding interest of the defendant Evans, assigned to Tours all of her right, title and interest in and to seven oil and gas leases on land in Coffey County, Kansas. These leases were identified in the assignment by lease descriptions and recording data and are not involved in this appeal. The second full paragraph of that assignment is as follows:

"And for the same consideration the Assignors covenant with the Assignee, his heirs, successors or assigns: That the Assignors are the lawful owners of and has good title to the interest above assigned in and to said Lease, estate, rights and property, free and clear from all liens, encumbrances or adverse claims; That said Lease is valid and subsisting Lease on the land above described, and all rentals and royalties due thereunder have been paid and all conditions necessary to keep the same in full force have been duly performed, and that the Assignor will warrant and forever defend the same against all persons whomsoever, lawfully claiming or to claim the same. *Assignors intend to convey, and by this instrument convey, to the Assignee all interest of whatsoever nature in all working interests and overriding royalty interest in all Oil and Gas Leases in Coffey County, Kansas, owned by them whether or not the same are specifically enumerated above. . . .*" (Emphasis added.)

This instrument was filed for record on February 16, 1971, at 8:50 o'clock A.M. and duly recorded in Book 13 of O & G at page 116-119, office of the Register of Deeds, Coffey County, Kansas. It is an admitted fact that the register of deeds entered this instrument in the grantor-grantee index and in the numerical indexes as to those tracts specifically described therein, but that nothing was shown on either the grantor-grantee index or the numerical indexes with respect to the Kufahl lease specifically on lands here in question.

Under date of January 30, 1975, the same Grace V. Owens, assignor to Tours, executed and delivered a second assignment of her working interest in the Kufahl lease to Burris. Prior to the date of that assignment, Burris personally checked the records in the office of the register of deeds and, following the date of the assignment to him, Burris secured an abstract of title to the real estate in question. Neither his personal inspection nor the abstract of title reflected the assignment to Tours. There is no contention here as to lack of consideration for the assignment to Tours or for that to Burris, the sole question being—Which defendant, J. R. Burris or International Tours, Inc., is the owner of the working interests in all zones below the Mississippi lime formation, subject only to the 1/16th of 7⁄8ths overriding royalty interest in favor of the defendant John R. Evans under the Kufahl lease?

It is admitted in the record and by the parties in oral argument before this court that the portion of the assignment to Tours which provides "Assignors intend to convey, and by this instrument convey, to the Assignee all interest of whatsoever nature in all working interests and overriding royalty interest in all Oil and Gas Leases in Coffey County, Kansas, owned by them whether or not the same are specifically enumerated above . . .," was a valid transfer of the Owens interest in the Kufahl lease to Tours as between the parties to that instrument. However, Burris directs attention to the provisions of K.S.A. 58-2203, form of warranty deed, and notes that the general language of the assignment omits the names of the lessor and lessee in the lease from which the working interest is carved, omits the date of the lease, all legal descriptions, and the recording data. He argues that as a result of the omissions contained in that portion of the assignment to Tours, it was impossible for the Register of Deeds of Coffey

County to identify the real estate involved and to make the proper entries in the numerical index. Accordingly, even though he checked the records at the courthouse, he was unaware of the assignment to Tours and he did not learn of the prior conveyance until after he had purchased the rights from Grace V. Owens, after which he had an abstract of title prepared which also failed to reflect the assignment to Tours. He concludes that the failure to complete the proper indexes was not a problem created by the register of deeds but rather by Tours, and that as a result of the omissions, the Tours assignment as recorded was not sufficient to give constructive notice to a subsequent innocent purchaser for value. It is upon this point that Burris prevailed before the trial court.

There is no doubt but that the assignment to Tours was valid. The case of *In re Estate of Crawford,* 176 Kan. 537, 271 P.2d 240, was an action which among other things challenged the sufficiency of a deed in which the property to be conveyed was described as follows:

"Mineral rights and oil royalties on properties heretofore conveyed by me and lots in the town of Stafford.

"Grantor expressly reserves a life estate in all of the property hereby conveyed." (p. 540.)

In upholding the validity of the deed, the court said:

". . . It clearly conveyed his mineral interests on properties located in Stafford County 'heretofore conveyed' by him, and lots in the town of Stafford. The evidence was clear that by the execution of the deed he intended to convey *all* of his holdings in Stafford County, reserving to himself a life estate. Specific identification of those properties was a simple matter merely by reference to the public records." (p. 543.)

and referred to the general rule concerning the sufficiency of description contained in deeds found in 26 C.J.S., Deeds § 30, as follows:

"In general any description in a conveyance of the property is sufficient if it identifies the property, or if it affords the means of identification, as by extrinsic evidence.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"Generally, therefore, any description is sufficient by which the identity of the premises can be established, or which furnishes the means of identification, of the property covered by the deed or which it was intended to convey thereby with reasonable certainty, and without the exercise of arbitrary discretion." (pp. 640-643.)

". . . [A]nd the property may be identified by extrinsic evidence, such as records of the county where the land is situate." (p. 645.)

See also *Riley v. Foster*, 95 Kan. 213, 148 Pac. 246; *Bryant v. Fordyce*, 147 Kan. 586, 78 P. 2d 32, Syl. 3. Of interest also is the case of *Texas Consolidated Oils v. Bartels*, 270 S.W. 2d 708 (Tex. Civ. App. 1954), Syl. 3, as follows:

"Where instrument described property purported to be covered therein as all the owner's right, title and interest, legal and equitable, in all oil, gas and mining leases, royalties and overriding royalties located anywhere within the United States, most of which were located within the states of New Mexico, Kansas, Oklahoma, Louisiana, and Texas the description was sufficient to reasonably identify and to have conveyed the land and constituted notice to subsequent purchasers of the land after said instrument was recorded."

The Tours assignment purports to convey all interests in all oil and gas leases in Coffey County owned by assignors "whether or not the same are specifically enumerated above." Obviously, the clear intent of the language contained in that assignment was to convey to the assignee whatever interests the assignors may then have owned in the Kufahl lease in Coffey County, which could have been identified by reference to the public records. Also, Burris makes no claim that because the instrument contained both specific and general descriptions the general description was ineffective. (See *Hudson v. Underwood*, 229 N.C. 273, 49 S.E. 2d 508 [1948], to the effect that a single instrument may convey separate tracts by specific and general descriptions where such an intent can be found from the language used in that instrument.)

Burris focuses his argument as to lack of notice on the general description of the lease contained in the assignment to Tours. He points to K.S.A. 19-1210 which provides that where a county has determined to maintain a numerical index, as provided by K.S.A. 19-1209, the register of deeds is required to make entries in such index by reference to the quarter section described in the recorded instrument. He then argues that the legislature surely intended the indexing and recording statutes (58-2221 and 58-2222) to be considered together for purposes of interpretation. Burris claims that recording of an instrument in the numerical index is essential for constructive notice to a subsequent purchaser.

Burris directs attention to the case of *Cities Service Oil Com-*

*pany v. Adair,* 273 F. 2d 673 (10th Cir. 1959), in support of his position that an instrument not filed in the numerical index is outside the chain of title and therefore does not impart notice. The principal question presented in the *Adair* case arose from the plaintiff's claim that the term of the lease under which it claimed was extended by the production of oil and gas in paying quantities on a portion of the original leased premises assigned to another, and that the filing of an affidavit of production as provided by K.S.A. 55-205 by such other assignee gave notice to the defendants of plaintiff's continuing interest, even though the latter's leasehold was not described in the affidavit. The argument was that the defendant, having knowledge of the existence of the original lease and its provision that it would be extended beyond the primary term by timely production on any part thereof, was required to examine the records to determine if an affidavit of production had been filed by the owners of any part of that lease. It was noted that Kansas follows the general rule that a person acquiring an interest in property is not charged with notice of a recorded instrument which does not appear in the chain of title to such property (*Hollinger v. Imperial Warehouse Co.,* 122 Kan. 709, 253 Pac. 215). The plaintiff argued that the filing of a production affidavit by a part owner of the lease gives as much notice as the filing of two or more owners of separate affidavits reciting the same facts. The court observed that when the affidavits of production describe only that land which the producer holds under production, it is indexed in the office of the register of deeds as affecting only that particular land and does not appear in the chain of title to the remaining lands of the original lease; and where the grantor-grantee index is used, the recording of a production affidavit filed by a producer holding only part of the leased premises would not be referred to under the names of any persons who were shown by the index to have held interests in other portions of the premises in which there had been no production. The court held that a reasonable construction of K.S.A. 55-205 is that in cases where the primary term of an entire lease has been extended due to production by a partial owner of the lease, the owners of other portions of the lease are required to file affidavits of production if they desire to protect their leaseholds as against innocent purchasers for value, the sole purpose of the statute being to give notice to the public that an oil

and gas lease has been extended beyond its primary term.

We do not interpret the decision in the *Adair* case to mean that a recorded instrument not appearing in the numerical index is outside the chain of title to real estate specifically described therein or as to real estate conveyed thereby. In the case at bar, the assignment of the Owens' interests in the Kufahl lease to Tours was an effective conveyance of those interests to Tours inasmuch as the general description contained in that instrument afforded means of identification of the property involved, and accordingly, when recorded it was in the chain of title to the property covered by the Kufahl lease.

In the case of *Ingram v. Ingram*, 214 Kan. 415, 521 P. 2d 254, we find the following:

> "It is obvious from this analysis of the Kansas statutes and decisions that in this state an oil and gas lease is a hybrid property interest. For some purposes an oil and gas leasehold interest is considered to be personal property and for other purposes it is treated as real property. . . . We have concluded that the legislature has determined that oil and gas leasehold interests are to be treated as *real property* under the statutes pertaining to the recording of instruments conveying or affecting real estate." (pp. 420-421.)

The assignment by Owens of the oil and gas leasehold interest to Tours, and subsequently of the same interest to Burris, would certainly come within this category. K.S.A. 58-2221 provides in part as follows:

> "Every instrument in writing that conveys real estate, any estate or interest created by an oil and gas lease, or whereby any real estate may be affected, proved or acknowledged, and certified in the manner hereinbefore prescribed, may be recorded in the office of register of deeds of the county in which such real estate is situated. . . ."

and provides further for the duties of the register of deeds to file the same for record immediately and in those counties where a numerical index is maintained in that office, to compare such instrument, before recording, with the last record of transfer in that office and if apparent errors are found in the instrument offered for record, to not record the same until after notifying the grantee where such notice is reasonably possible.

K.S.A. 58-2222 provides:

> "Every such instrument in writing, certified and recorded in the manner hereinbefore prescribed, shall, from the time of filing the same with the register of deeds for record, impart notice to all persons of the contents thereof; and all subsequent purchasers and mortgagees shall be deemed to purchase with notice."

The fact that the instrument of assignment to Tours was properly acknowledged and certified "in the manner hereinbefore prescribed" is not in dispute. It is also admitted that the instrument was recorded as provided by K.S.A. 19-1204, as follows:

"The register of deeds shall have custody of and safely keep and preserve all the books, records, deeds, maps, papers and microphotographs deposited or kept in his office; he shall also record, or cause to be recorded, in a plain and distinct handwriting, in suitable books to be provided and kept in his office, all deeds, mortgages, maps, instruments and writings authorized by law to be recorded in his office and left with him for that purpose, and shall perform all other duties required of him by law."

The statutes also provide that the register of deeds shall keep in his office a general index, direct and inverted, divided into seven columns, in which that officer is to make correct entries of every instrument recorded to show description, remarks, recording data, nature of instrument, names of grantees and grantors, and the time of reception (K.S.A. 19-1205). That official is to maintain a receiving book as provided by K.S.A. 19-1206 in which are to be entered among other things the names of the grantor and grantee named in an instrument offered for record, and which statute provides also:

". . . Whenever any instrument has been received by him for record, he shall immediately endorse upon such instrument his certificate, noting the day, hour and minute of its reception, and the fees received for recording the same; *and the date of record of such instrument shall be from the date of filing. . . .*" (Emphasis added.)

K.S.A. 19-1207 provides that the register of deeds shall keep a plat book with an index thereto; and K.S.A. 19-1208 provides that he shall keep an index of each volume of records kept in that office showing on one page the names of the grantors in alphabetical order and on the other page the names of the grantees in alphabetical order. K.S.A. 19-1209 provides for the numerical index whenever such is deemed necessary by the county commissioners. These are duties of the register of deeds and when in this case the instrument of assignment was delivered to that official for recording and was endorsed as provided by K.S.A. 19-1206 and returned, Tours had done all that was then possible for the grantee to do.

The case of *Ingram v. Ingram,* supra, dealt with the assignment of an oil and gas leasehold interest absolute in form but given for

security purposes. It was there held that such an instrument, when filed for record in the office of the register of deeds of the county wherein the property is situated as an instrument affecting real estate, imparts notice to all persons of the contents thereof under the provisions of K.S.A. 58-2222 effective with the filing of the same. (214 Kan. at 422.)

There is also the early case of *Poplin v. Mundell*, 27 Kan. 138, where in an opinion filed in 1882 the supreme court in considering the recording statutes, which are today in substance as they were then, stated:

"Clearly, under the reading of these sections, where a deed duly acknowledged and certified is left for record in the usual way, with the register of deeds, and is properly marked filed by him for record at the time of receiving such deed, it imparts notice to all persons of the contents thereof, and all subsequent purchasers must be deemed to purchase with notice. . . . But counsel insist that these sections are only a detached portion of the acts relating to registration, and that as [present sections 19-1205 and 19-1206] require every register to keep a receiving book and general index book, for the purpose of making an entry of every instrument when filed in the receiving book, and of making correct entries in the general index book so soon as the instrument is recorded, that any delay of *any of these steps deprives the record thereof of the power of imparting con*-structive notice of the existence of the deed and its contents, . . . Now in this case the actual recording of the deed . . ., and the entry thereof upon the general index or the numerical index records, need not be considered, because it cannot be expected that a register of deeds in the discharge of his duties shall write out each instrument in the record books on the date of its filing, and of course he is not to enter the same upon the general index or numerical index until the instrument is actually recorded in the books of the office. At least, it is not necessary for him to perform this duty until the instrument is recorded." (p. 156.)

The court concluded:

". . . It seems to us that when the party holding the title presents his deed, duly acknowledged and certified, to the register of deeds for record, and demands that it be placed upon record, and the register thereupon accepts the same, and duly indorses it filed of the date it is so presented, such party has discharged his whole duty to the public, and his muniment of title cannot be shaken by any subsequent purchaser." (p. 158.)

In *Gas Co. v. Harris*, 79 Kan. 167, 100 Pac. 72, the mineral lease was duly recorded but was not properly indexed. The court succinctly stated the rule as to indexing as follows:

"The fact that the filing of this lease was not properly indexed by the register of deeds has not been suggested as a fact which in any manner affects its validity. It was otherwise duly recorded, and therefore imparted notice as fully as if it had been properly indexed." (p. 173.)

Referring again to *Texas Consolidated Oils v. Bartels*, supra, the Texas court in considering a conveyance of "all oil, gas and mining leases, royalties and overriding royalties located anywhere within the United States, most of which were located within the states of New Mexico, Kansas, Oklahoma, Louisiana, and Texas," held that where the instrument of assignment was sufficient to have conveyed the interest, "purchasers of said mineral interest subsequent to recordation of the instrument had constructive notice and they could not claim ignorance of such prior sale as a basis of estoppel against prior purchaser." (270 S.W. 2d at 709, Syl. 4.)

There is nothing in this record on appeal to indicate that Tours, as the prior assignee, misled Burris, the subsequent assignee, in any manner whatsoever.

We hold that the assignment to Tours was a valid conveyance from Grace V. Owens of her working interests in the Kufahl oil and gas lease in all zones below the Mississippi lime; that such instrument was duly acknowledged and certified as provided by law and when on February 16, 1971, that instrument was delivered to the Register of Deeds of Coffey County, who accepted it and endorsed it filed and "duly recorded in Book 13 of O & G at page 116-119," all over her signature, that Tours had done all that was then required by the law of this state; and that the instrument thereafter and from the time of such filing imparted notice to all persons, including Burris, of the contents thereof, and Burris must be deemed to have taken the subsequent assignment with such notice.

One further point remains to be resolved. In his brief, Burris contends that the finding of the trial court that "defendant International Tours, Inc. has no right, title or interest in and to the deep rights in the Kufahl lease owned by J. R. Burris and that J. R. Burris should have his title in said lease quieted against any right, title or interest of defendant International Tours, Inc." and the judgment based on that finding quieting title in Burris as against any right, title or interest of Tours, was determinative of that issue as between plaintiffs and Tours, and no appeal having been taken from that part of the judgment, Tours lacks standing on appeal before this court. Suffice it to say that the issue here is between Tours and Burris and it was precisely that issue which was before the trial court. The plaintiffs were granted judgment of condi-

tional cancellation from which there has been no appeal. We find no merit in this contention on the part of Burris.

The judgment of the lower court on the issue between the appellant International Tours, Inc. and the appellee J. R. Burris is reversed and remanded with instructions to enter judgment in conformity with this opinion.

ABBOTT, J., dissenting: I respectfully set forth my reasons for dissent. I am convinced that in those counties where a numerical index is maintained, the majority opinion has the practical effect of:

1) Making the register of deeds search the records to ascertain if the grantor of a "Mother Hubbard" instrument owns any real estate, owns any estate or interest created by an oil and gas lease, or is named in an instrument whereby any real estate may be affected; and requiring the registrar to obtain the legal description contained therein and enter it in the numerical index; or

2) Making the numerical index unreliable and requiring both the numerical index and general index (direct and inverted) to be checked in every instance.

I cannot believe the legislature ever intended the register of deeds to have such responsibility, nor do I believe it intended the numerical index to become another index to check in addition to the general index and the receiving book.

Perhaps a brief review of the operation in the office of the register of deeds and a brief history of the development of our law here in Kansas would be helpful in understanding the dilemma the appellee finds himself in through no fault of his own.

The concept of recording instruments affecting real estate originated in Massachusetts and contemplated a minimum of transactions. There were no indexes. As the number of transactions increased, it soon became necessary to start an index. Kansas adopted an indexing system in 1868 which is basically the same system used today. When the instrument is delivered to the office of the register of deeds, it is immediately entered into the "receiving book" and the day, hour and minute of its receipt is entered on the instrument, as is the fee received for recording the same (see K.S.A. 19-1206). The register of deeds then immediately enters into the receiving book the time of receipt, the name of the grantor, the name of the grantee and the fee received. Later, when

the instrument is recorded, the remaining column showing "to whom delivered" is completed. The receiving book is important, as it imparts notice to interested parties during the time it takes for the register of deeds to cause a copy of the instrument to be made in the appropriate recording book. Originally, the instrument was copied by hand into the appropriate record. Now, in the vast majority of counties, reproduction equipment of some kind, including microfilm, is used.

A number of record books are maintained, including those for recording deeds, mortgages, oil and gas and miscellaneous instruments.

After an instrument has been recorded, it is indexed so that it can be located. It would be sheer folly to require one in even the smallest counties to locate a given instrument or follow a chain of title without an index system. After the instrument is indexed, it is returned to the proper party and the receiving book no longer has any value in that an abstractor or a reasonable person would not check it other than to see what instruments have not yet been recorded and indexed.

The book and page number of the book in which the instrument is recorded is entered in the indexing system. Originally, a general index was all that was mandatory, and is the only system used in three counties today. The general index consists of direct and inverted books (see K.S.A. 19-1205). Both the direct and inverted indexes contain the identical information with only one distinguishing feature. Both indexes are in alphabetical form. In the direct index, the grantor is listed first; in the inverted index, the grantee is listed first. Thus, one may examine a chain of title either from its present owner back to its original owner by starting with the inverted general index, or, if one knows the name of the original owner, the chain of title may be examined by starting with the direct index. Each general index has seven columns, only one of which is of importance in this case. The columns show the time of receipt, names of grantees, names of grantors, nature of instrument, volume and page where recorded, remarks, and description of tract. It is the column "description of tract" which plays an important part in the injustice the majority has inflicted upon appellee in this case. Just how will be described in detail hereinafter.

The general indexes are time consuming to use and require the

utmost care and concentration in order to not overlook an instrument which might affect the title.

Some practical person concluded that it would be just as simple to index by tracts of land so that all of the instruments affecting a particular piece of real estate would be indexed under a legal description rather than alphabetically by grantor or grantee. The legislature enacted what is now K.S.A. 19-1209 and gave the county commissioners of each county authority to order the register of deeds to start a numerical index. Of the 105 counties in Kansas, all but three have done so.

The numerical index was checked by appellee and appellant's instrument was not entered therein. Obviously, under the facts of this case, there was no way the instrument could be entered unless the register of deeds was willing and had the personnel to check the records to ascertain what "interest of whatsoever nature in all working interests and overriding royalty interest in all Oil and Gas Leases in Coffey County, Kansas, owned by them" and then to enter the instrument under the correct legal description in the numerical index. The majority opinion does not suggest that the register of deeds has that duty, and surely the legislature never intended that result. It then follows that in Kansas one may no longer rely on the numerical index and one must check both the numerical and general indexes.

In this case, even by checking both the numerical and general indexes, appellee would not have discovered the instrument under which appellant claims its interest. Appellee's inability to find the instrument is the responsibility, or fault, of appellant. Appellant caused an instrument to be drawn assigning oil and gas leases. Seven (7) specifically enumerated oil and gas leases were listed therein. Each legal description was set out in a separate paragraph after the words, "in and to the following Oil and Gas Leases located in Coffey County, Kansas, more particularly specified as follows, to-wit. . . ." Each legal description contained the date of the particular lease, the name of the lessor and lessee; a proper legal description, including section, township and range; and the book and page of recordation of the original instrument. NOTHING was set forth concerning any other real estate, or interests of any kind in oil and gas leases, in the description portion of the instrument.

Then, as is set forth in the majority opinion, appellant inserted

in the warranty clause of the instrument a "Mother Hubbard" clause purporting to convey any other interest in oil and gas leases in Coffey county.

When the register of deeds indexed the instrument, it could not be entered in the numerical index except under the seven legal descriptions set forth. When information was entered in the general indexes, both direct and inverted, the seven legal descriptions were entered in the column "description of Tract." The "Mother Hubbard" clause was not shown. This is understandable, as most people who work with real estate do not customarily read the warranty clause to ascertain what real estate is affected thereby.

Appellee personally checked the tract index prior to leasing the property and caused an abstract to be built after appellant claimed an interest. The abstract did not show appellant's purported interest. An examination of the indexes did not give notice to appellee. Where the index showed a description to real estate for which the abstractor was not searching, there would have been no reason for the abstractor to have examined it further. *Hollinger v. Imperial Warehouse Co.*, 122 Kan. 709, 253 Pac. 215.

In 1882, at a time when the pace of life was more leisurely and simple, Kansas chose to adopt a rule which, simply stated, said every instrument in writing which conveys real estate, and is properly acknowledged and certified, imparts notice from the time it is filed with the register of deeds whether or not the deed is recorded or indexed. The court chose to commit Kansas to that position despite the fact the jury had found in the case that the grantee had knowledge of an earlier deed wherein the grantor had transferred his interest in the same real estate and she could not be a bona fide purchaser. *Poplin v. Mundell*, 27 Kan. 138 (1882). *Poplin* has been cited with approval on a number of occasions and would appear to be clearly the law in Kansas.

The majority view in other jurisdictions would appear to be that only when an instrument is properly recorded and indexed will it operate as notice. In those jurisdictions, constructive notice would place the burden on the person whose duty it is to have an instrument recorded, as between that person and a subsequent bona fide purchaser, to see that all of the prerequisites of a valid and complete recordation are complied with. One who files an instrument for record has it in his power to examine the records to

insure that the instrument was accurately recorded and indexed so as to impart notice. Prospective purchasers or creditors cannot protect themselves from an instrument which is not properly recorded and indexed. See McDermott, Land Titles and Land Law § 1.21E; 66 Am. Jur. 2d, Records and Recording Laws § 95, p. 398, and § 130, p. 420; 26 C.J.S., Deeds § 71; 8 Thompson, Real Property § 4306, p. 320, 324 n. 97, 327 n. 17 (1963); 8A Thompson, Real Property § 4351, p. 58 (1963).

In view of this state's operation for nearly 100 years under the rules expressed in *Poplin,* supra, I would not place the burden of seeing that an instrument is properly recorded and indexed on the person offering it for recordation. To do so would be disruptive of commerce and create havoc.

I would hold that where an instrument in writing conveys real estate, any estate or interest created by an oil and gas lease, or whereby any real estate may be affected, and the instrument does not contain a full, complete and accurate legal description therein and as a result thereof is not fully and accurately recorded and indexed, constructive notice would not be imparted to a subsequent bona fide purchaser. Such a holding would not be contrary to or out of harmony with any of the decisions cited in the majority opinion.

It does not seem unreasonable to hold a person responsible who offers an instrument containing a "Mother Hubbard" clause for recordation to see that it is properly recorded and indexed. This is particularly so where the clause is buried in the warranty clause of the instrument. There is authority to that effect.

"The duty of deciding against which block a deed is to be indexed is not on the county clerk but on the person offering the deed for record, and where the indorsement on a deed offered for record does not specify the proper block against which the deed is to be indexed, the consequences are the fault of the grantee who offers the deed for record." 26 C.J.S., Deeds § 78, p. 805.

The view that responsibility for inaccuracy rests solely on the recording officer and the application of that view is discussed in 66 Am. Jur. 2d, Records and Recording Laws § 133, p. 422, where it is concluded:

"But while such holder is exempt from prejudice by the misconduct or neglect of the clerk, the exemption is not extended to the holder's own acts that through design or negligence affected others. Thus, if through any fault of the grantee an instrument is not actually recorded or a defective record is made, then subsequent

purchasers are not charged with notice of the existence of the instrument."

McDermott, Land Titles and Land Law § 3.25C, p. 66, states:

"A deed having a description such as 'all my land' may be an effective conveyance, although it does not have priority over a previous unrecorded conveyance of a specific part."

It is important to note that even in many jurisdictions holding as Kansas does, that the filing of an instrument operates as a record of it and that it imparts constructive notice from the time of filing of the actual contents of the deed, the rule is limited to situations where both the grantee and the subsequent purchaser who relied on the erroneous record are innocent of any fault or negligence.

". . . Where the grantee has occasioned the error, the cases place the risk of loss on him. If a mortgage is recorded in a deed record through mistake of the mortgagee, it is not constructive notice.

"If the grantee is himself guilty of any negligence or irregularity with reference to the recording of his deed, whereby his deed does not appear of record, he cannot claim priority as against a subsequent bona fide purchaser." 8A Thompson, Real Property § 4351, pp. 58-59.

I find no fault with syllabi 1 and 2 of the majority opinion. This has long been the law in Kansas. The "Mother Hubbard" clauses are seldom used, but were found to be convenient for deathbed transfers and in situations where time was of the essence and information concerning legal descriptions was not available.

I have been unable to find a case construing a "Mother Hubbard" clause which is placed in the middle of the warranty clause. Normally, the clause is inserted where the legal description is found. The fact a "Mother Hubbard" clause passes title as between grantor-grantee should not operate to defeat appellee's title on the facts of this case.

Appellant was in a position to see that a legal description was set forth in the instrument, particularly somewhere other than in the middle of the warranty clause, so as to give notice in the usual and customary manner. Appellee, who examined the records, secured an abstract and had the abstract examined, was guilty of no dereliction. The instrument under which appellant claimed an interest simply did not appear in the chain of title which appellee was bound to search and hence imparted no notice. The loss between appellee and appellant should be borne by appellant

who was responsible for the buried "Mother Hubbard" clause. I would affirm the trial court.

HARMAN, C.J., joins in the foregoing dissent.