THE BURRTON LAND & TOWN COMPANY V. JEROME B. HANDY et al.

1. EQUITY JURISDICTION — *Mistake in Deed*—*Correction.* The rule is, that where property has been included by mistake in a deed which the parties never intended should be conveyed, which the grantor was under no legal or moral obligation to convey, and which the grantee in good conscience has no right to retain, a court of equity will interfere and correct the mistake.

2. GRANTOR, *Entitled to Have Deed Reformed.* Where a grantee purchased from a grantor a fractional 80-acre tract of land subject to the right-of-way of the Union Pacific Railway Company, which, under an act of congress, was 400 feet in width, but the parties did not actually know the width of the right-of-way, and the conveyance, without conforming to the intent of the parties, included the right-

of-way with covenants of general warranty, *held*, that the grantor was entitled to have the deed reformed so as to except therefrom the right-of-way to which he had no title.

### Error from Ellsworth District Court.

On April 2, 1888, *Jerome B. Handy* commenced his action against *The Burrton Land & Town Company* and the Ellsworth Loan & Investment Company to recover $1,662.50 upon a promissory note executed to Ruth A. Tarr on the 21st of May, 1887, with interest at 8 per cent. from that date, by the Burrton Land & Town Company, which note was afterward transferred and assigned to the plaintiff, and also to foreclose a mortgage upon the north half of the southeast quarter and the south half of the northeast quarter of section 19, township 15, range 8, in Ellsworth county, executed by the land and town company to Mrs. Tarr to secure the note. The petition further alleged, that the Ellsworth Loan & Investment Company claimed an interest or lien upon the mortgaged premises, but that the same was inferior to plaintiff's lien. The Ellsworth Loan & Investment Company, having obtained a similar note from Mrs. Tarr, filed its answer and cross petition praying for judgment upon the note held by it, and also to foreclose the mortgage given to secure the same. The notes were given by the land and town company to Mrs. Tarr as part of the purchase-price of the real estate purchased of her. After the commencement of this action, the Union Pacific Railway Company, in a case brought by it as plaintiff against the parties to this action, in the nature of ejectment, in the district court, obtained a judgment, on April 2, 1889, for 200 feet of right-of-way on each side of the center of its railroad track over and across the real estate purchased, to secure the purchase money for which the notes were given. Handy, by his amended petition, in addition to the foreclosure of the mortgage, also alleged a mutual mistake in the execution of the deed given by Mrs. Tarr and her husband, Smith R. Tarr, to the Burrton Land & Town Company and also of the mortgage, and asked to reform the in-

struments, so as to except from the covenants thereof a right-of-way 400 feet in width in favor of Union Pacific Railway Company over and across the real estate. The Burrton Land & Town Company alleged in its defense, by way of counter-claim, damages for a breach of the covenants of warranty of the deeds to the land purchased by it from Mrs. Tarr and her husband, in consequence of the railway company being the owner and in possession of 400 feet of right-of-way over and across the same. Trial had at the November term of the court for 1889, before the court with a jury. The jury returned a verdict in favor of Handy against the Burrton Land & Town Company for $1,931.77½, and also returned a like verdict in favor of the Ellsworth Loan & Investment Company. The jury answered the following questions submitted upon the part of Jerome B. Handy and the Ellsworth Loan & Investment Company:

"Ques. At the time the Burrton Land & Town Company purchased the fractional 'eighty' in controversy, was the same occupied by the Tarrs, and used for farming and grazing purposes? Ans. It was.

"Q. At the time of the purchase of the land in controversy, was it well known and understood between the parties to such purchase and sale that the railroad ran through the fractional 'eighty'? A. It was.

"Q. At the time of the purchase of the fractional 'eighty,' was it discussed and understood that the Union Pacific Railway Company had a right-of-way through said fractional 'eighty'? A. It was.

"Q. Did the Burrton Land & Town Company purchase the said fractional 'eighty' with the understanding and belief that it was buying the same subject to a right-of-way through the land? A. It did.

"Q. Did Ruth A. Tarr and Smith R. Tarr each sell the land with the intention of selling the same subject to the right-of-way through said 'eighty'? A. They did.

"Q. Did the Burrton Land & Town Company make a proposition to the Tarrs that it would give $5,000 for the fractional 'eighty' and blocks 31 and 32 in Minnick's addition, subject to the right-of-way of the Union Pacific Railway Company through fractional 'eighty'? A. It did.

"Q. If you answer the last question in the affirmative, then state if the amount of such right-of-way was not unknown or undetermined upon by the parties. A. It was unknown and undetermined.

"Q. Did the Tarrs accept the proposition to sell the land subject to the right-of-way of the Union Pacific Railway Company? A. They did.

"Q. If you answer the last question in the affirmative, was there any new contract between the parties that the Tarrs accepted other than the proposition of the said Burrton Land & Town Company, as stated in question six? A. There was none.

"Q. If you allow the Burrton Land & Town Company damages in this case, then state how much, if any, damages you allow by reason of the right-of-way passing over a portion of block 32. A. $100.

"Q. If you allow the Burrton Land & Town Company damages in this case, please state how much, if any, you allow by reason of the 400 feet right-of-way through the fractional 'eighty.' A. None, as it was bought subject to the railroad right-of-way."

The jury also answered the following questions submitted by the Burrton Land & Town Company:

"Ques. For what purpose did defendant buy the land in question? Ans. For platting.

"Q. Did defendant know that the Union Pacific Railway Company owned a right-of-way 100 feet wide through the fractional 80-acre tract at the time it purchased the land? A. An undetermined width.

"Q. If you answer the last question 'yes,' please state, then, who told them so. A. By general discussion at the time.

"Q. Did Ruth A. Tarr or any of her agents inform defendant at the time of said purchase there was a 100 feet right-of-way through said land? A. Informed them that there was one of an undetermined width.

"Q. Did defendant ever agree with Ruth A. Tarr that a 100 feet right-of-way should be excepted out of the covenants in the deed? A. No, not with Ruth A. Tarr in person, but with her agent, E. W. Wellington, of a right-of-way of undetermined width.

"Q. If you say 'yes' to the last question, state when, where and by whom said agreement was made. A. At

the time of sale, on or near the premises, by her agent, E. W. Wellington, and the representatives of the Burrton Land & Town Company.

"Q. Did defendant have any knowledge when they bought the land in question that the Union Pacific Railway Company owned, or claimed to own, a 400 feet of right-of-way through said land? A. According to evidence, the width of the right-of-way was not known.

"Q. Did defendant and Ruth A. Tarr ever agree that a 400 feet right-of-way should be excepted out of the covenants of the deed for said land? A. No, not with Ruth A. Tarr in person, but with her agent, E. W. Wellington, of a right-of-way of undetermined width.

"Q. If you say 'yes' to the last question, state when, where and by whom the agreement was made. State specifically. A. At the time of sale, on or near the premises, by her agent, E. W. Wellington, and the representatives of the Burrton Land & Town Company.

"Q. How much land is there in the tract purchased by defendant outside of the two blocks, or in the fractional 80-acre tract? A. Eighty acres, more or less, subject to whatever right-of-way the railroad company had.

"Q. How much land is there in the 400 feet strip from which the Union Pacific Railway Company has ejected defendant since its purchase? A. Evidence shows that there is 24 and a fraction acres.

"Q. What portion of the $5,000 was agreed to be paid for this fractional 80-acre tract? A. $3,000.

"Q. What was the expense of the defendant in regard to the action brought by the Union Pacific Railway Company for the right-of-way over the real estate in question? A. From the evidence and our instructions, we believe that there is nothing due said defendant."

Subsequently judgments were rendered upon the verdicts and a decree entered for the foreclosure of the mortgage as prayed for. The Burrton Land & Town Company excepted, and brings the case here.

*Jetmore & Jetmore,* and *J. E. Howard,* for plaintiff in error.

*Ira E. Lloyd,* for defendants in error.

2—54 KAS.

The opinion of the court was delivered by

HORTON, C. J.: The principal question involved in this case is, whether the deed executed by Ruth A. Tarr and her husband, Smith R. Tarr, to the Burrton Land & Town Company, on or about the 20th of May, 1887, purporting to convey the following premises, situate in Ellsworth county, in this state, to wit: "All that portion of the north half of the southeast quarter and the south half of the northeast quarter of section 19, township 15 south, of range 8 west of the sixth principal meridian, lying north of the center of the Smoky Hill river, being 80 acres, more or less," may be reformed so as to except the right-of-way of the Union Pacific Railway Company over the premises described in the conveyance. The deed contains covenants of general warranty. The right-of-way of the railway company contains 200 feet in width on each side of the railroad. (12 U. S. Stat. at Large, 491, § 2.) At the time of the purchase of the land from the Tarrs, the railway was in operation, and the land and town company must be presumed to have purchased with full notice thereof. The evidence and findings of the jury show that the land and town company submitted two propositions to the Tarrs to buy the land, one proposition being to measure the tract, and deduct the amount of land taken by the right-of-way and the river, and pay $65 an acre for the land remaining; the other proposition being to pay $3,000 for the land without measurement, subject to the right-of-way of the railway company. The Tarrs accepted the last proposition. The deed was executed, but omitted to make any exception of the right-of-way.

The complications in the case grow out of the fact that the width of the right-of-way seems to have been unknown to all the parties at the time of the conveyance, yet the railway, which was constructed under the provisions of the act of congress of July 1, 1862, providing for a railroad and telegraph line from the Missouri river to the Pacific ocean, was

entitled to a right-of-way to the extent of 200 feet in width on each side of its road, where it passed over public land. The evidence is sufficient to show that the land and town company purchased the land subject to the right-of-way. We think it is immaterial in this case whether the right-of-way was known at the time to be 50 feet, 100 feet, or 400 feet. All the parties had the same knowledge as to the width of the right-of-way as the other. The Tarrs did not intend to convey and warrant the title to the right-of-way, and the land and town company did not expect to purchase and obtain a good title to the same. Before the purchase there was much discussion among the parties as to the extent of the right-of-way. The secretary and general manager of the land and town company figured out that 100 feet of right-of-way would take something over six acres of land, and when the offer of $3,000 was made for the 80-acre tract, and $1,000 each for the two blocks, the right-of-way was taken into consideration.

The counsel for the land and town company admit that, if the right-of-way had been only 100 feet in width, there would have been no trouble between the parties. This is a concession that the company did not in its purchase expect to obtain a good title to the right-of-way. That the Tarrs did not intend to convey and warrant the title to the right-of-way of the railway company; that the land and town company knew that there was a right-of-way of the railway upon the land; that it made its offer in view of such right-of-way, and purchased the land subject to the right-of-way, are

2. Grantor, entitled to have deed reformed.

sufficient, in our opinion, to permit a reformation of the deed, and relieve the Tarrs from any damages for the breach of their covenants of warranty on account of their want of title to the right-of-way. The covenants of warranty were never intended by the Tarrs to embrace the right-of-way, and the land and town company did not purchase the land with that understanding. The rule is, that where property has been included by mistake in a deed

1. Equity juris-
diction—mis-
take in deed
—correction.

which the parties never intended should be conveyed, which the grantor was under no legal or moral obligation to convey, and which the grantee in good conscience has no right to retain, a court of equity will interfere and correct the mistake. ( 2 Pom. Eq. Jur., § 843; *Benson v. Markoe*, 33 N. W. Rep. [Minn.] 38; *Canedy v. Marcy*, 13 Gray, 373; *Stedwell v. Anderson*, 21 Conn. 139; *Clayton v. Freet*, 10 Ohio St. 544.)

The evidence shows that the land and town company knew that the right-of-way was 400 feet in width a few weeks after its purchase of the land; yet with full knowledge of this, the general manager of the company, in the fall of 1887, wrote several letters promising to pay the notes, but wanting time. This evidence was properly received as tending to show that the company accepted the deed subject to the right-of-way, and made no complaint when it learned that the width was 400 feet instead of 50 or 100 feet. In view of the special findings of the jury and the evidence supporting the same, the other alleged errors concerning the evidence of the 80-acre tract of land are immaterial. The two blocks of land purchased for $1,000 each were conveyed by a separate deed. It does not appear from the evidence that these blocks, or either of them, were conveyed or accepted subject to any right-of-way; therefore the jury properly allowed $100 damages on account of the breach of the covenants of warranty in the conveyance of block 32. The land and town company had some expenses in defending the action brought by the Union Pacific railway to eject it from a part of block 32. One witness testified that $75 or $100 were paid in looking up the matter. On account of this evidence, $100 will be allowed as additional damages, to be deducted from the judgment rendered.

The judgment will be modified accordingly.

All the Justices concurring.