No. 44,875

BILL BEAMS, CHARLES MCDONALD and JIMMY RICE, Trustees of the First Southern Baptist Church, Hays, Kansas, *Appellees,* v. IRENE WERTH and PETER A. WERTH, Her Husband, *Appellants,* and FREDA WINTERS, a Single Person, ELEANOR C. WICKIZER and JAMES WICKIZER, Her Husband, and H. SCHWALLER AND SONS, INC., a Corporation, *Appellees:*

(438 P. 2d 957)

Opinion filed March 9, 1968..

*Lelyn J. Braun,* of Garden City, argued the cause, and *Dale H. Corley,* also of Garden City, was with him on the brief for the appellants.

*Clayton S. Flood,* of Hays, argued the cause, and *F. F. Wasinger* and *Thomas C. Boone,* also of Hays, were with him on the brief for the appellees.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action brought by the Trustees of the First Southern Baptist Church of Hays, Kansas, to quiet title to real estate, and a counterclaim brought by the defendants, Irene Werth and Peter A. Werth, her husband, to quiet title to real estate against the plaintiffs and all other defendants and for damages. The trial court after hearing the matter found generally in favor of the plaintiffs and entered an order quieting the plaintiffs' title as requested in their petition, following which appeal has been duly perfected to this court by the defendants, Irene and Peter A. Werth.

Prior to 1926 Henry E. Winters, the common grantor in this case, owned the Northwest Quarter of Section 34, Township 13 South, Range 18 West of the 6th P. M. in Ellis County, Kansas, which is located near the city of Hays.

In 1926 Henry E. Winters sold a portion of the land at the Northwest corner of the quarter in question to Ellis County for road purposes. Formal conveyance of such tract to Ellis County was

not made until 1932. About eight months after this conveyance, Ellis County conveyed to Oscar Geyer and Frances Geyer, his wife, and S. S. Chittenden and Myrtle Chittenden, his wife, who in turn conveyed the property to Irene Werth of Ellis County on the 10th day of April, 1937.

In 1926 after the sale of the tract by Henry E. Winters to Ellis County, the county engineer of Ellis County set stakes on a curve at the Northwest corner of the section to indicate the dividing line between the Winters' property and the tract conveyed to Ellis County. After the stakes were put in place, Oscar A. Struble, tenant of Henry E. Winters, set fence posts and constructed the fence in question along the curve as staked out by Ellis County, and he placed fence posts wherever there were stakes. Mr. Struble farmed the remainder of this quarter for about forty years and kept up the fence between the Winters' and Werths' properties. The county engineer prepared the description of the property in the deed by which Henry E. Winters conveyed to Ellis County. The same description was used in all subsequent conveyances in the chain of title by which the Werths ultimately acquired their title. The description by which these conveyances were made reads as follows:

"Beginning at the Northwest Corner of Section Thirty-four (34), Township Thirteen (13) south, Range Eighteen (18), west of the 6th P. M., thence east Four Hundred Twenty-six (426) feet along the section line between Sections Twenty-seven (27) and Thirty-four (34), Township Thirteen (13), Range Eighteen (18), thence southwesterly Six Hundred Twenty-four (624) feet along a curve with a radius of Four Hundred Twenty-six (426) feet to *intersect* the section line between sections Thirty-three (33) and Thirty-four (34), in township Thirteen (13), Range Eighteen (18), four Hundred Twenty-six (426) feet south of the Northwest corner of said Section Thirty-four (34), thence North Four Hundred Twenty-six (426) feet along the line between said Sections Thirty-three (33) and Thirty-four (34) in township thirteen (13) south, Range Eighteen (18) west of the 6th P. M., to the place of beginning." (Emphasis added.)

In an effort to present a confusing situation with as much clarity as possible, a sketch is set forth on the opposite page. Except for certain additions hereafter noted, this sketch is identical to plaintiffs' Exhibit 1 prepared by John W. Smith, one of the plaintiffs' expert engineering witnesses, on the 21st day of January, 1966. The letters, A, B, C, D, X and Y, encircled; the names, Werth and Church, and the arc scribed on a 426-foot radius from the center point A (arc BYD), have been added.

On the 16th day of March, 1959, Henry Schwaller of Hays purchased by contract the Northwest Quarter of Section 34, heretofore described (with two exceptions), containing approximately 151.1 acres for $1,000 per acre from the heirs of Henry E. Winters.

The only exception to the conveyance of the Northwest Quarter of Section 34 material to this litigation is the property described as the Werth tract, the description of which was changed in a supplemental agreement between the parties to the Schwaller contract to read:

"Beginning 426' South of the Northwest (NW) corner of the Northwest Quarter (NW/4) of Section Thirty Four (34); thence Northeasterly along a

curve of 426′ radius, said radius point falling in the aforementioned NW/4, to a point on the North line of Section 34, 426′ East of the Northwest (NW) corner of the NW/4 of Section 34; thence 426′ West to the Northwest (NW) corner of Section 34; thence 426′ South, along the West Section line of Section 34, to the place of beginning."

The supplemental agreement thereupon further read: "and the deed of conveyance from First Parties to Second Party for said real estate shall describe the same in such manner."

It should be noted the description of the Werth tract excepted from the conveyance was changed, under Schwaller's supervision, to exclude reference to the length of the curve as 624 feet, and it also designated that the radius point fall *"in the aforementioned NW/4"* (Emphasis added), although Henry Schwaller in his testimony denied having any knowledge that a discrepancy existed in the description, and that he did not learn of it until after the Church took title and had started to build. He testified that John W. Smith informed him the descriptions in the deeds to the respective properties "did mesh."

John W. Smith testified that as a result of his survey the measurements, shown in the legal description of the Werths' deed, indicated that the curve line constituting the third dimension of the Werth tract did not correspond with the alleged boundary line fence, and that this discrepancy was well known to Henry Schwaller prior to the conveyance of the adjoining property to the Church.

On the 8th day of December, 1961, H. Schwaller and Sons, Inc., a real estate development company, entered into a memorandum agreement to sell a tract of land for a consideration of $12,500 to the First Southern Baptist Church of Hays, such tract being described as follows:

"A tract of land in the N.W. corner of Section 34, T13S, R18W, described as follows: Beginning at a point which is 245.78 feet South and 40 feet East of the N W corner of Section 34, T13S, R18W; thence South parallel to the West line of Section 34, 100 feet; thence East at 90 degrees, 260 feet; thence North, parallel to the West line of Section 34 approx. 312.78 feet to 33 feet South of the North line of Section 34; thence West, parallel to the North line of Section 34, 55.6 feet; thence Southwesterly, and left, on a curve of 426 foot radius whose *tangent lines* are the North and West section lines of Section 34, to the point of beginning." (Emphasis added.)

(*Note:* The 55.6 feet mentioned in this description, parallel to the North line of Section 34, has been changed, or corrected, in a later description. The sketch—plaintiffs' Exhibit 1—gives it as 38.39 feet.)

Thereafter on the 14th day of December, 1962, H. Schwaller and Sons, Inc. and the heirs of Henry E. Winters conveyed to the First Southern Baptist Church of Hays, Kansas, real estate situated in Ellis County, Kansas, described as follows:

"Lot One (1), Block Three (3) Centennial Estates Fourth Addition To the City of Hays, Kansas."

It is stipulated that the description of the property in the Schwaller memorandum agreement dated December 8, 1961, and the description in the foregoing deed to the Church covers property of the same footage, measurements, metes and bounds in the Northwest Quarter of the section in question.

The property here in controversy (referring to the sketch) is described as varying from approximately 27 to 30 feet in width located between the curved fence line (broken line with X's) and the arc scribed from center point C on a radius of 426 feet (arc DXB). The Werths claim the Northwest corner of the section up to the fence line, whereas the Church claims the tract conveyed to it extends beyond the fence line to the arc DXB.

The property in controversy is valuable to the Church in that it provides access to its property, and to the Werths in that it provides parking and access to their business. Various witnesses testified the value of the area in controversy is between $8,000 and $10,000 to the parties claiming it.

After the Werths purchased their tract in 1937 they constructed a service station and a hamburger restaurant on it. At the time of the purchase roads ran along the North and West sides of the Werth tract, and another road ran along the North side of the curved fence constituting the third dimension of their tract. In addition to a frontage entrance to the Werths' property, the curved road was used as an access to the businesses on the Werths' property. In 1948 the Werths closed the East entrance to such curved road and left the South entrance open as a means of access to their place of business. The county never claimed the road after its conveyance of the property.

The parties stipulated that there are no records in the office of the county engineer of Ellis County that there ever was a road dedicated or vacated at the place in question along the fence line. Through the years the Werths had gradually filled in the ditch constructed near the fence line which had served as drainage for the road, and at the time of this action gravel and fill materials

were evident along the fence line on the North and West side of the fence, while to the South and East side of the fence the land had been continually farmed and was typical of the soil of wheat fields in the area.

Other than to indicate the physical characteristics of the soil on either side of the fence in question, we do not regard the prior existence of a road along the fence line as material to a determination of this case. The county purchased the tract for road purposes and sold it by the same description set forth in the deed to the county.

The Trustees of the First Southern Baptist Church (plaintiffs-appellees), hereafter referred to as the Church, filed a petition to quiet title to the tract which they purchased as described in their deed, indicating that the Werths claim some estate or interest in the property. By the second cause of action the Church alleged, if it should be determined that the Werths have some estate or interest in the real property, the heirs of Henry E. Winters (naming them individually) and H. Schwaller and Sons, Inc., by virtue of the covenants in their warranty deed, have violated or breached such covenants, and the Church prayed for damages in the sum of $7,500 by reason thereof.

The Werths in their answer joined issues; denied that the Church was the owner of the legal and equitable fee title described in the Church's deed; alleged that the Werths were the owners of the legal and equitable title in fee simple and were in possession of the tract described in the Werths' deed; that their property was so described in its initial conveyance from the common grantor, Henry E. Winters, from the quarter section in question; and in the alternative alleged that the Werths are the owners by reason of the fact that they and their predecessors in title have been in open, notorious, adverse, peaceable and continuous possession thereof for more than 25 years last past, claiming title and ownership thereto exclusively against all others (giving the third dimension of the tract as "a curve which is represented by a partitioned fence, constructed by the common grantor of plaintiffs and defendants").

By counterclaim the Werths sought damages in the sum of $25,-000 by reason of the cloud created upon their title, a restraining order issued against them which prevented their use of the property and the completion of improvements thereon, and the necessary expenditure of large sums of money for attorney fees, engineering fees, surveying and other costs in connection with this litigation.

They further sought punitive damages alleging that H. Schwaller and Sons, Inc. and their agent, John W. Smith, disregarded the partition fence which divided the two tracts of land, and well knowing this fact conveyed a tract of land to the Church in this action overlapping the Werth tract and were herefore willfully and intentionally responsible for the litigation therein, and by reason thereof they were guilty of gross and wanton negligence, and that the Werths were entitled to punitive damages in the sum of $10,000.

The Church in an effort to prove its cause of action relied upon the deed (marked Joint Exhibit 4) whereby the Werths acquired title to their tract, and plaintiffs' Exhibit 1, prepared by the Church's expert engineering witness, John W. Smith. (See sketch and explanation thereof.)

Plaintiffs' Exhibit 1 introduced in the trial court was a drawing prepared *to scale* from an aerial survey photograph taken in December, 1962, by the engineering firm of Van Doren *et al*, constituting a part of the contour map of the entire quarter section in question, showing the location of the oil tanks, filling station and other buildings situated upon the Werth tract, and also the location of the fence line at the edge of the wheat field then in existence on the tract being purchased by the Church from Schwaller. The contour map was prepared under the direction of John W. Smith, a licensed civil engineer, in his platting of the Schwaller tract, as an agent of Schwaller and Sons, Inc. Mr. Smith testified that in the late summer of 1965, he surveyed and staked the disputed area and set stakes at 50-foot intervals around the curve and along the curve from the fence line; that such stakes are no longer in place, but the points could be re-established without difficulty.

The accuracy and detail in the preparation of plaintiffs' Exhibit 1 to scale is uncontroverted by the parties to this action.

It is the theory of the Church, as disclosed by the expert engineering witnesses called to prove its case, that the description in the Werths' deed conveyed a tract of land in the Northwest corner of Section 34 (See sketch), bounded on the North by the section line AB, and on the West by the section line AD, and the third boundary being the arc described as DXB.

Before proceeding with further discussion it should be noted that throughout the record the angle formed by the Northwest corner of Section 34 was assumed to be 90 degrees, there being no evidence

or indication to the contrary. This being the case, the center point of an arc scribed on a radius of 426 feet, whose tangent lines are the North and West section lines of Section 34 (arc DXB) would be in Section 34 at point C (See sketch), and the angle formed by lines drawn from center point C to the two points of tangency would be 90 degrees. These points of tangency are point D and point B, both of which are 426 feet from point A.

The foregoing are basic assumptions made by the expert engineering witnesses who testified in the case for the plaintiffs.

A considerable part of the plaintiffs' expert engineering testimony was devoted to the portion of the description in the Werths' deed which described the curve on a radius of 426 feet as being 624 feet in length. Mathematical calculations establish, as did the expert testimony in this case, that the length of a quarter circle arc scribed on a radius of 426 feet would have to measure 669.24 feet, rather than 624 feet, or 650.63 feet as John W. Smith who conducted the survey testified. The experts further emphasized that if the points of tangency remain at 426 feet (points D and B), the length of the arc would have to be 669.24 feet.

Counsel for the plaintiffs, in examining the plaintiffs' expert witnesses, made it a point to bring out that the description in the Werths' deed did not expressly state where the center point was located from which to scribe an arc on a radius of 426 feet. The engineering witnesses assumed from the physical evidence on the premises, the bulge of the fence line being toward the Northwest corner of the section, that point C was intended to be the center point. It was reasoned on this basis, the points of tangency being fixed and definitely ascertainable (points D and B), that the stated length of the curve in the description of the Werths' deed (624 feet) was erroneous and therefore immaterial to a consideration of the boundary line, because the arc scribed from point C on a radius of 426 feet to the points of tangency would have to be 669.24 feet. The conclusion drawn from such testimony was that the Werths' deed described the third boundary of the Werth tract as arc DXB, and the Werths did not have legal title to the disputed tract by virtue of their deed.

The fallacy of the plaintiffs' position lies in the assumptions made by their expert engineering witnesses. They concluded by looking at the description in the Werths' deed that the center point, from which the arc on a radius of 426 feet was to be scribed, was not indi-

cated in the description. While the Werths' deed does not expressly state where the center point is located, inferentially the description does disclose its location. It is located at point A—the Northwest corner of Section 34. (See sketch.)

It is a fundamental rule of plane geometry, taught in high schools throughout the state, that a straight line which is tangent to the arc of a circle can never be *intersected* by such arc. A straight line which is tangent to the arc of a circle merely touches the arc at one point, called the point of tangency.

The word "intersect" means to cut across; to pierce or divide by passing through or across; to meet and cross at a point; to cut into one another. (Webster's Third New International Dictionary.)

The third boundary described in the Werths' deed was: "thence southwesterly Six Hundred Twenty-four (624) feet along a curve with a radius of Four Hundred Twenty-six (426) feet *to intersect* the section line between sections Thirty-three (33) and Thirty-four (34)." (Emphasis added.) Only an arc scribed from point A on a radius of 426 feet could intersect the section line between Sections 33 and 34 at point D. This being true, the arc to be scribed *by the description in the Werths' deed* is arc BYD, and we so hold as a matter of law.

Actually, Schwaller, or those in his employ as his agents, were well aware of the foregoing situation. One need only study the language used by Schwaller in his supplemental agreement with the heirs of Henry E. Winters, which changed the description of the Werth tract excepted from the conveyance of the Northwest Quarter of Section 34 to Schwaller. In fact, Schwaller was so emphatic in the supplemental agreement that a specific clause was inserted, requiring that the deed conveying the property from the heirs of Henry E. Winters to Schwaller "shall describe" the real estate of the Werths excepted from the conveyance "in such manner" as it appeared in the supplemental agreement.

Therefore, if we adopt the plaintiffs' theory and use only the fixed points from which to scribe an arc on a radius of 426 feet, ignoring the 624-foot dimension as erroneous and immaterial, the boundary line dividing the Werths' property from that acquired by the Church is located on the arc described as BYD. This leaves the plaintiffs virtually no property at all.

Here the deed to the Werths, conveying the property by the description used in the original conveyance from the common

grantor of the parties, was prior in time and on record for many years before the conveyance of the adjoining property to Schwaller or the Church. Under these circumstances, the conveyance of the tract of land to the Church is subject to the prior conveyance of property from the Northwest Quarter of Section 34 to the Werths.

It must be conceded that mistakes were made in the deed describing the land conveyed to the Werths and their predecessors in title. The mistaken description was prepared by the county engineer of Ellis County and used in the deed formally conveying the tract at the Northwest corner of Section 34 to Ellis County in 1932. The deed was executed by Anna Winters, the surviving widow of Henry E. Winters, and Anna Winters, as guardian of her minor daughters.

While John Smith, the plaintiffs' expert witness, attempted to leave an impression that the descriptions contained in the Church's deed and in the Werths' deed could be reconciled and did mesh, he admitted "there is a little discrepancy in the length around the curve." At another point in the testimony of John Smith on cross examination, in speaking of the curved dimension line in the Werths' deed, he conceded error in the description as follows: "Now there is possibly one little question that could arise and that is whether it went completely the opposite way or whether it laid off towards the corner itself. We have, of course, you might say visible evidence, you could tell that it was probably over where everything else fits together."

It is apparent from the foregoing testimony that John Smith inferentially endeavored to ascertain the intention of the original parties to the deed when the Werth tract was conveyed by Anna Winters to Ellis County.

Another witness, Bernard J. Brungardt, called by the plaintiffs to testify in the case, was an attorney at law practicing in the city of Hays since January 1, 1955. Immediately prior to that time he was the city manager of Hays. He testified that both he and John Smith knew of the erroneous description in the Werths' deed as early as 1952; that Clarence Loreditsch, who was then county engineer, drafted the description whereby the original Werth tract was conveyed to the County of Ellis; that the conveyance was made to Ellis County for the purpose of laying out a road across the corner; that the road curved in a certain direction; and that Mr. Loreditsch, who was county engineer at the time, knew where

he was going to put the road "and that was his intention because the road ran that way." He testified:

"Q. After that road was layed out and constructed the outlines of the tract of ground remaining in the Northwest corner of Section 34-13-18, Ellis County, Kansas, was pretty well defined, was it not?

"A. Well, I would say that it was bounded by the road, yes. And bounded by the section line. That was their intention I am sure of that."

It must be emphasized this is not an action by the plaintiffs to reform a deed on the ground that a mutual mistake was made by the parties to the original conveyance in 1932 when they described the property conveyed. Between the Church and the Werths this is a *quiet title* action. In a quiet title action, as in an ejectment action, the plaintiff must rely on the strength of his own title and not on the weakness of his adversary's title if the plaintiff is to prevail in the action. (*Smith v. Harris,* 181 Kan. 237, 311 P. 2d 325, and cases cited therein at p. 250 of the official report; and *Unruh v. Whorton,* 194 Kan. 32, 397 P. 2d 84.)

It is apparent the plaintiffs in this action, and the trial court in adopting the plaintiffs' theory of the case, confused this action with one to reform a deed. On the facts here presented there are several reasons why this action cannot be converted into an action to reform a deed.

An equitable principle of law was recognized early in the history of Kansas that a deed could be reformed to conform to *the original intention of all parties to the instrument,* where a mutual mistake was made in describing the property and the instrument did not convey the property intended. (*Claypoole v. Houston,* 12 Kan. 324.)

The general rule is that where property has been included by mistake in a deed which the parties never intended should be conveyed, which the grantor was under no legal or moral obligation to convey, and which the grantee in good conscience has no right to retain, a court of equity will interfere and correct the mistake. (*Land Co. v. Handy,* 54 Kan. 13, 37 Pac. 108, Syl. ¶ 1.) A case to the same effect is *Critchfield v. Kline,* 39 Kan. 721, 18 Pac. 898.

The foregoing equitable principle, however, has its limitations. To justify the reformation of a deed the party seeking reformation is required to clearly show a *mutual mistake,* and that he would be prejudiced by a failure to reform the deed. (*Conaway v. Gore,* 24 Kan. 389; but see *Hough v. Munford,* 160 Kan. 572, 164 P. 2d 92.) Furthermore, in all cases where a party seeks the reformation of a deed, the party asking for the relief must stand upon some equity

*superior* to that of the party against whom he asserts it. (*Conaway v. Gore,* 21 Kan. 725.)

Since the right of reformation is historically an equitable remedy, *it is subject to being cut off by a bona fide purchaser*—a subsequent purchaser for value and without notice of the mistake. Therefore, even if a case is made for reformation, the defendant will prevail if he is a bona fide purchaser, the burden of proof being upon the plaintiff to show that the defendant was not in fact a bona fide purchaser. (*Miles v. Martin,* 159 Tex. 336, 321 S. W. 2d 62 [1959]; and *Wilson v. Meredith, Clegg & Hunt,* 268 S. W. 2d 511 [Tex. Civ. App. 1954].)

In considering an action to reform a deed in *National Bank v. Wentworth,* 28 Kan. 183, the foregoing rule was recognized in Kansas when the court said:

". . . It is doubtless a general proposition, that where rights of third parties have intervened a mistake cannot be corrected to their prejudice. But that proposition cannot avail the bank in this case, because, as alleged, the bank parted with nothing. . . ." (p. 188.)

For a discussion on transfers of real estate made by mistake, see Restatement of the Law, Restitution, § 163, p. 661.

In *Palmer v. The Land & Power Co.,* 180 Kan. 492, 306 P. 2d 152, the court had before it an action to reform a deed on the ground of mutual mistake, and it was held the mistake relied upon must, in the absence of fraud by one of the parties, be mutual, and such action must be brought *within the five-year period of the statute of limitations.*

Prior decisions confirm that an action to reform a deed on the ground of mutual mistake of the parties must be brought within the five-year period of the statute of limitations. (G. S. 1949, 60-306, *Sixth; Travis v. Glick,* 150 Kan. 718, 96 P. 2d 624; and *Regier v. Amerada Petroleum Corp.,* 139 Kan. 177, 30 P. 2d 136.) There is no indication in any of the commentaries on K. S. A. 1967 Supp. 60-511 (5) that any change was intended regarding this section of the statute of limitations in the new code of civil procedure.

A careful review of the record, keeping in mind the foregoing rules on reformation of a deed, definitely establishes this action was not tried by the plaintiffs on the theory of reformation. Silence in the record indicates that too many of the rules have been ignored. It appears from the manner in which the plaintiffs tried their case and arguments in their brief that the plaintiffs were seeking to have the description in the Werths' deed *construed* by ignoring the

portions of the description which were unfavorable to them. In doing so they inferentially attempted to rely on the intention of the original parties when the Werth tract was first conveyed off the Northwest corner of Section 34 by looking to the physical facts on the premises—the way the road ran around the corner. Their approach to this point was founded on the proposition that the description in the Werths' deed did not disclose the location of the radial point from which to scribe an arc. Upon this false premise they asserted the physical facts on the premises to bolster their theory as to the property conveyed by the description in the Werths' deed. Nowhere in the record is there any indication the plaintiffs sought to have the description in the Werths' deed *reformed* to conform to the intention of the original parties. On the record here presented the plaintiffs are bound to stand upon the description of the property conveying the Werth tract as it appears in the deed to the Werth tract.

K. S. A. 60-1002 authorizes one claiming title or interest in real property to maintain *an action to quiet his title* against any person who claims an estate or interest therein adverse to him, for the purpose of determining such adverse claim.

It is readily apparent upon examination of all the evidence presented by the plaintiffs they failed to sustain the burden of proof in their quiet title action against the Werths. They have succeeded in showing the Werths have title under the description in their deed to more property than the Werths are actually claiming.

We now turn to the evidence presented by the Werths. In addition to various exhibits admitted into evidence without objection before the trial court, the Werths rely upon the testimony of Oscar A. Struble and the defendant, Peter A. Werth himself.

Oscar A. Struble was the nephew of Henry E. Winters and began farming the quarter section of land in question as a tenant of Mr. Winters in the year 1915. He farmed the land continuously for a period of approximately forty years. During the 1950's Mr. Struble's son farmed the land for a period of four years, but prior to the sale of the land by the heirs of Henry E. Winters to Schwaller in 1959, as heretofore indicated, Oscar A. Struble was again farming the land as a tenant. Much of the testimony of Mr. Struble has heretofore been related in the opinion to supply the chronology of events which led up to this lawsuit. The basic facts established by the testimony of Mr. Struble stand in the record uncontradicted

and unassailed by any party to the action. His testimony establishes that the conveyance of the tract of land to which the Werths now claim title was originally made by Henry E. Winters to Ellis County orally prior to 1928. Henry E. Winters died in 1928. The conveyance was made to the County for road purposes to round out the corner.

The county engineer of Ellis County at that time staked the road off, and Mr. Struble built the fence around the curve going by the stakes, placing posts wherever there was a stake. (The testimony is not clear whether the road was put in before or after the land was fenced along the curve by Mr. Struble.) Mr. Struble farmed the land until Schwaller bought it, maintaining the curved fence at the same location throughout the entire period of time until 1959. To Mr. Struble's knowledge, no one ever questioned the fence line as being the boundary between these two properties during all this period of time, the fence being treated by Mr. Struble as the boundary line all of these years.

Peter A. Werth testified he purchased the Werth tract after looking up the description of the property in the office of the register of deeds to ascertain the ownership thereof. After he had completed the purchase in 1937 he called the county engineer, Elinas Road, to survey the property. Mr. Werth helped him survey the property. After the survey was completed the county engineer told Mr. Werth his property was "over to the fence line." (The record discloses no objection to this testimony.)

Immediately thereafter Mr. Werth measured the three dimensions of his property in accordance with the description in his deed, and came out with the same measurements as the county engineer; that he measured around the curve on the fence line which came out 624 feet, and as far as he knew that was correct.

In the vigorous cross examination which followed Mr. Werth's testimony conducted by counsel for the plaintiffs, counsel for the heirs of Henry E. Winters, and counsel for Schwaller and Sons, Inc., his testimony remained unshaken. After going through the measurements disclosing the manner in which he made them, measuring 426 feet for the North-South and East-West distances, and 624 feet along the fence line on his side of the fence, he testified, "I was satisfied that the measurement was right;" that the measurements brought him "Right to the fence line. I never believed anything else." He testified as follows:

"Q. And that fence line was on the south side of the road?

"A. Don't get me confused. Do you mean this fence here?

"Q. We are talking about this fence here.

"A. Yes, that was my property line all those years. I never claimed anything different."

On further cross examination he was questioned as to whether he owned the property up to the fence line, as follows:

"Q. You don't know whether you owned it or not, do you?

"A. I always did know I owned it."

The substance of Mr. Werth's testimony on cross examination was that he only bought the property which the County bought and sold, and convinced himself by measuring the property that the fence line was the boundary dividing the two tracts of land; that the fence was the line dividing his property from the Winters' property for all of the years he owned it; and it was not until the plaintiffs filed this action that he knew any one was definitely claiming property on his side of the fence.

The trial court found "the defendant Werth claimed title only under the description in his deed from Oscar Geyer, dated April 10, 1937, as shown by the abstract," and that "he apparently assumed that the description in his deed carried to the fence line south of the old roadway." The trial court also found "that the defendant Werth acquired no land by adverse possession."

On the state of the record at the close of the plaintiffs' case, the testimony of Peter A. Werth constitutes an admission against interest which is binding upon the Werths. (*Hiniger v. Judy*, 194 Kan. 155, 398 P. 2d 305, Syl. ¶ 2; *Reeder v. Guaranteed Foods, Inc.*, 194 Kan. 386, 393, 399 P. 2d 822, *Bellport v. Harder*, 196 Kan. 294, 299, 411 P. 2d 725; and *Schoof v. Byrd*, 197 Kan. 38, 49, 415 P. 2d 384.) In other words, the Werths claim title only to the fence line whereas the description in their deed conveyed more property to them.

The testimony of Mr. Struble suggests an agreement between Henry E. Winters and Ellis County to fix the boundary line of the tract conveyed by Winters to Ellis County along the fence line laid out by the county engineer of Ellis County and constructed by Mr. Struble, the tenant of Mr. Winters. From the time the fence was originally constructed until Schwaller purchased the balance of the Winters tract in 1959, a period of more than thirty years, the property owners immediately adjacent to the fence line acquiesced in the line so agreed upon. Under the circumstances it must be considered as the true boundary line between them.

The law on this point is found in the case of *In re Moore*, 173 Kan. 820, 252 P. 2d 875. The first four paragraphs of the syllabus read:

"An official survey merely establishes corners and boundary lines. It does not determine title to property in dispute.

"Where parties by mutual agreement fix a boundary line and thereafter acquiesce in the line so agreed upon, it must be considered as the true boundary line between them, even though the period of acquiescence falls short of the time fixed by statute for gaining title by adverse possession.

"The owners of adjoining tracts of land may, by parol agreement, settle and permanently establish a boundary line between their lands, which, when followed by possession according to the line so agreed upon, will be binding upon the parties and their grantees. Such an agreement, followed by possession, is not obnoxious to the statute of frauds.

"Even though a line agreed upon by adjoining property owners be not exactly correct it becomes the true dividing line between the lands by virtue of such an agreement, even if a subsequent survey should establish a different boundary line."

On the record here presented neither the plaintiffs nor any of the codefendants are in a position to object to an application of the foregoing rules of law.

Among the stipulations made by the parties at the commencement of the trial was one which reads as follows:

"It is stipulated that defendant Werth is not claiming the land in question by virtue of deed or other conveyance but by virtue of the claim of adverse possession."

The question immediately posed is whether this stipulation affects the outcome of this lawsuit.

As heretofore noted in the opinion the answer of the Werths joined issues and further alleged that the Werths were the owners. of the legal and equitable title in fee simple and were in possession of the tract *described* in the Werths' deed; that their property was *so described* in its initial conveyance from the common grantor, Henry E. Winters, from the quarter section in question; and in the alternative alleged that they and their predecessors in title had been in adverse possession of the tract in question.

It is provided in K. S. A. 60-208 (*e*) (2) that a party may also state as many separate claims or defenses as he has *regardless of consistency* and whether based on legal or on equitable grounds or on both.

In 1 Vernon's Kansas Statutes Annotated, Code of Civil Procedure, § 60-208, ¶ 208.8, p. 496, it is said:

". . . In general, a party will not be required to elect at the pleading stage of the case which legal theory he will rely upon; this would defeat the purpose of allowing inconsistent pleading. . . ."

It is apparent adverse possession was alleged by the Werths as a second alternative defense, which in legal theory is inconsistent with the first defense alleged. This, however, under our present code pleading is proper.

In the trial of this case the Werths' evidence applied to the affirmative defense first alleged in their answer, and not to adverse possession. This is confirmed by the specific finding of the trial court that "the defendant Werth" acquired no land by adverse possession. Under the circumstances it cannot be said the matter was presented to the trial court by the Werths on the theory of adverse possession.

The stipulation cannot be regarded as material insofar as the plaintiffs' cause of action is concerned (to quiet title against the Werths) because they failed to sustain their burden of proof to show superior title to the tract in controversy in themselves. Upon failure of the plaintiffs' proof in the quiet title action it became immaterial for the Werths to assert an affirmative defense.

The record discloses that neither the parties nor the trial court was misled by the stipulation now under discussion. This is not only indicated by the findings of the trial court, but also by the theory upon which the plaintiffs presented their case. The stipulation cannot be said to be an admission of fact by which a party is bound because the trial court was well within its province in finding that the Werths were claiming title by virtue of their deed.

The stipulation made by counsel for the Werths is tantamount to an erroneous admission of law. The Werths had changed counsel shortly before the trial of this action, and it was no doubt prompted by an erroneous legal concept of the description in the deed to the Werth tract—the same erroneous legal concept asserted by the plaintiffs in the trial of the action.

It is, therefore, if anything, an erroneous admission of law. But the court is not bound by an erroneous admission of law made by one of the parties in the action.

The Supreme Court of Illinois in *The People v. P., Ft. W. & C. Ry. Co.*, 244 Ill. 166, 91 N. E. 48 (1910), had an analogous situation before it, where the court said:

". . . The admission was one of law and not of fact. It was not made to deceive, and did not deceive or prejudice, plaintiffs in error. They were

not induced by it to do or omit to do anything they would have done or omitted had the admission not been made. The admission had no influence upon the decision of the chancellor, for, notwithstanding the admission, the finding was for the defendant and the bill was dismissed. Parties cannot, by their admissions of law arising out of an undisputed state of facts, bind the court to adopt their view. . . ." (p. 171.)

Based upon the foregoing authority and upon all of the facts and circumstances presented by the record herein, we hold the stipulation presently under discussion immaterial to a determination of this action.

Under the circumstances, we hold that the Werths have sustained the burden of proving that they are entitled to judgment quieting their title against the plaintiffs and the other codefendants.

Points relied upon by the appellants herein (Irene Werth and Peter A. Werth) were sufficient to challenge the attention of the court to the matters heretofore considered.

The point raised by the appellants that the trial court erred in finding that the old fence line, which divided the two tracts in question, could not be determined by any survey remains to be considered.

The plaintiffs' entire lawsuit is firmly bottomed upon an aerial photo made by Van Doren *et al.*, as heretofore discussed in connection with exhibit No. 1 and the sketch. The aerial photo in question was admitted in evidence as the plaintiffs' exhibit No. 2 without objection by any of the parties. At the time this photo was taken the fence line in question was in place. This aerial photo was used *to survey and plat* the Schwaller tract. The plaintiffs' own expert engineering witness, John Smith, testified concerning the preparation of exhibit No. 1 (See sketch and explanation thereof), which was prepared to scale from an overlay on the aerial photo. Without further elaboration, we hold as a matter of law, based upon uncontroverted documentary evidence in the record, that the location of the fence line in question can be plotted by a simple process of mathematical calculation. The fact that the fence line could not be located in a survey by scribing an arc is immaterial.

The appellees, collectively, make a point of the fact that the appellant, Irene Werth, is the fee owner of the Werth tract of land described in joint exhibit No. 4 (the Werths' deed), and that the appellant, Peter A. Werth, her husband, has no record title interest therein whatever. They argue although Irene Werth appeared personally during the entire trial of said action, she did not testify.

It is a little late to raise an objection for the first time on appellate review. At no time during the testimony of Peter A. Werth, either upon direct or cross examination, or at any other time during the trial, was any objection made to the testimony of Mr. Werth on the point under consideration. No motion was made to have his testimony stricken, and the point was never argued in the trial court. This no doubt resulted from the testimony of Mr. Werth on cross examination as follows:

"Q. Now this deed is to your wife Irene Werth. Did she negotiate this purchase or did you?

"A. I done the negotiating.

"Q. Did she have money of her own at that time?

"A. No, we have been a joint deal ever since.

"Q. Did the money that you used to pay for the purchase of this real estate come from you or her?

"A. Well, we have—we are one. I don't know how to explain it to you.

"Q. Is there any particular reason, Pete, that this title was taken in her name and not in your name?

"A. That was the advice of our attorney.

"Q. Who was your attorney at that time?

"A. Henry Herrman.

"Q. And was there any reason why he told you to take title in Mrs. Werth's name?

"A. Yes, because I was a dying man at that time.

"Q. Because you were sick?

"A. That's right.

"Q. But the money that was used to pay for the land was money that you and she had accumulated over the years of your marriage?

"A. That's right."

We find no merit in the contention that Mrs. Werth, the record title owner, did not testify.

In conclusion we hold the trial court erred in finding for the plaintiffs generally, and in entering judgment quieting the plaintiffs' title. On the evidence presented the trial court should have entered judgment quieting the Werths' title.

Review of this case on appeal has been made difficult by the failure of counsel to adhere to the Supreme Court's Rules on Appellate Practice. (Rule No. 6 [c] and [g], 197 Kan. LXI, LXII.) The record on appeal incorrectly lists all witnesses under the heading of "Plaintiffs' Witnesses," whereas there are three sets of defendants, all of whom called witnesses. The evidence presented in the record has been divided into two parts, the second portion consisting of the "Appellees' Designation of Additional Portions of the Record,"

presenting the matter under the old style of "Abstract" and "Counter Abstract." It was impossible to correlate the isolated portions of the verbatim testimony set forth in the "Counter Abstract" with the testimony in the "Abstract." The dates of filing and service of all pleadings or papers reproduced or narrated in the record, except the notice of appeal, have been omitted. When the confusion of this case on the merits was added to the confusion brought about by the reproduction of the record, it became necessary to call for the original transcript of the trial to review the proceedings.

The foregoing practice by counsel is not condoned. Shoddy practice in bringing the record to the appellate court for review is being encountered too often, invariably adding to the burdens of review. Unless improvement is soon noted in adhering to the Rules of Appellate Practice among the members of the bar generally, the court may find it necessary to impose sanctions against those who are slow to learn or ignore the rules.

The judgment of the lower court is reversed with directions to quiet the Werths' title, to proceed upon the second cause of action alleged by the plaintiffs in their petition, and to proceed upon the counterclaim of the defendants, Irene Werth and Peter A. Werth, for damages.

PRICE, C. J., dissents.

FROMME, J., dissenting: I respectfully set forth my reasons for dissent since I am convinced the court's opinion will cloud the title to both adjoining tracts of land.

This controversy arose between two adjoining property owners over title to a portion of a roadway abandoned or closed in the year 1948. The roadway had been used by the public from 1926 to 1948 and separated the adjoining properties.

The trial court heard the testimony of thirteen witnesses and examined many exhibits, including two abstracts of title. At the close of the trial it found generally in favor of plaintiff and entered a decree quieting plaintiff's title to the property described in plaintiff's deed. The description of property in the plaintiff's deed included that portion of the roadway in controversy.

In the majority opinion this court has reversed the judgment for plaintiff and entered judgment quieting Irene Werth's title to the roadway. The reproduction of the record presented to this court

was so confusing the original transcript of the proceedings was requested. This court has reviewed the evidence in the transcript and substituted its judgment for that of the trial court.

A trial court's findings and judgment based upon substantial competent evidence, though controverted, should not be disturbed upon review. (See Hatcher's Kansas Digest, Appeal and Error § 507-8 for supporting cases.)

This court on appeal may not substitute its judgment for that of the trial court unless the issues are clear, no meritorious defense is shown and such judgment is supported by uncontroverted evidence. (*Byer v. Byer*, 180 Kan. 258, 303 P. 2d 137.)

Additional facts should be noted.

Henry E. Winters owned a quarter section of land near Hays, Kansas. In the year 1926 Ellis County secured oral permission to round off the northwest corner of the quarter for a roadway. The roadway was graded and, when completed, it separated a triangular tract in the northwest corner from the balance of the quarter.

This triangular tract lying north of the curved roadway was deeded to Ellis County in 1932. This was six years after the roadway was first laid out, graded and used by the public.

As shown by the plat (p. 535) there is a strip of land thirty-three feet wide on the north and forty feet wide on the west side of the quarter being used for city streets. (The City of Hays has since grown and encompassed this area in question.) When the curved road was laid out around the corner a tenant of Mr. Winters fenced that portion of the quarter lying south of the curved road to keep his cattle off the highways. His fences were set on the right-of-way lines, not on the section lines. Therefore his fence was forty feet in from the west line of the section, thirty-three feet in from the north line of the section and followed the curved roadway around the corner of the quarter of land.

In 1932 Mr. Winters executed and delivered a deed to Ellis County which described the triangular tract as set forth in the majority opinion. This tract by mesne conveyance was acquired by Irene Werth in 1937. The descriptions in all of the deeds were the same. At the time Werth acquired the tract the curved roadway was being maintained by the county and used by the public. This continued from 1926 to 1948, a period of twenty-two years. The road had never been formally dedicated to public use. The road was closed and abandoned in 1948 without the formality of statutory proceedings but with the tacit approval of the county.

The fencing around the Winters land was maintained for sometime thereafter but gradually fell into disrepair and finally disappeared. It is not a visible boundary between the two tracts at the present time.

The Winters' land was sold to a read estate broker who caused it to be surveyed and platted into lots and blocks as Centennial Estates Fourth Addition to the City of Hays, Kansas. The plaintiff church purchased one of the lots and the agreed metes and bounds description of this lot includes a portion of the curved roadway abandoned in 1948 and now in controversy.

The church filed a petition to quiet title to its lot which is described by metes and bounds on page 536 of the majority opinion.

Irene Werth filed an answer and counterclaim for the purpose of quieting her title to the following described tract:

"*Beginning at the northwest corner* of Section Thirty-four (34), Township Thirteen (13) South, Range Eighteen (18) West of the 6th P. M., *thence east 426' along the section line* between Sections Twenty-seven (27) and Thirty-four (34), Township Thirteen (13) South, Range Eighteen (18) West; *thence southwesterly along a curve which is represented by a partitioned fence, constructed by the common grantor of plaintiffs and defendants, Henry E. Winters, to intersect the second line* between Sections Thirty-three (33) and Thirty-four (34) in Township Thirteen (13) South, Range Eighteen (18) West, *426' south of the northwest corner* of said Section Thirty-four (34) *thence north 426' along the line between said Sections* Thirty-three (33) and Thirty-four (34) in Township Thirteen (13) South, Range Eighteen (18) West of the 6th P. M. *to the place of beginning;* . . ." (Our emphasis.)

It is apparent this metes and bounds description is indefinite and ambiguous. The description does not fully encompass an area. The beginning point as shown on the plat in the majority opinion is "A." The boundary line proceeds east along the north section line a distance of 426 feet to point "B" on the plat. Point "B" is thirty-three feet (half the width of the street) from the closest point of the "partitioned fence." The description assumes point "B" is located at a point on this fence line. As previously stated the fence disappeared several years back and there are no present points of reference to set its present location. This fence has never been used as a boundary in any legal description set forth in a deed of conveyance. The fence line was not set on a true arc with a set radius. The abandoned roadway, according to the testimony and the plat varied in width from twenty to thirty feet. It should be noted further that this fence line was never closer to the west line

of the section than forty feet (half the width of the present street). The defendants' description erroneously assumes the fence line on the west touches the section line and from such point of reference the boundary line is to follow the section line 426 feet north to the place of beginning.

The metes and bounds description employed by the defendants and upon which this court quiets title for the defendants is indefinite, ambiguous and will confuse future legal titles to all adjoining tracts of land including the right-of-way condemned in 1952 by the State of Kansas along the west side of this section. (Case No. 11,977, District Court of Ellis County, Kansas.)

Tiffany Real Property (Third Edition) Vol. 4 § 990 states:

"In order to make a valid conveyance of land, it is essential that the land itself, the subject of the conveyance, be capable of identification, and, if the conveyance does not describe the land with such particularity as to render this possible, the conveyance is absolutely nugatory, . . ."

In *McBride v. Steinweden*, 72 Kan. 508, 514, 83 Pac. 822, a description of land was held to be so vague and uncertain as to be meaningless and void.

However, the description of land in the Werth deed merely appears uncertain and ambiguous and within the rational of *Hale v. Ziegler*, 180 Kan. 249, 303 P. 2d 190, and *In re Estate of Crawford*, 176 Kan. 537, 271 P. 2d 240 it would afford a means of identification by the use of extrinsic evidence. As determined by the trial court the arc of the radius bowed toward the northwest corner of the section and the land conveyed by the county was that identified on the plat by points A, B, X, D.

In *Hale v. Ziegler*, supra, it is said:

"Where the language used in an instrument creating and granting an easement may be criticized as vague and uncertain as to the exact land affected, but at the time of its creation particular lands are devoted thereto and used for a period of over forty years thereafter, it will not be held that such grant is void." (Syl. 4.)

I believe the particular lands devoted to the use of the grantee after the Werth deed was delivered in 1937 was a proper factor to be considered by the trial court. It is not reasonable that the county would intend to include the roadway in the area conveyed and then continue to maintain the road for use by the public for over eleven years.

The Werths in their counterclaim, seeking to quiet title, alleged:

"[T]hat defendants Irene Werth and Peter A. Werth, her husband and their predecessors in title have been in the open, notorious, adverse, peaceable, and continuous possession thereof of the said real estate described in paragraph No. 6 thereof for more than thirty-seven (37) years last past, claiming title and ownership thereto exclusively against all persons, firms and corporations whomsoever."

They stipulated prior to trial as follows:

"9. It is stipulated that defendant Werth is not claiming the land in question by virtue of deed or other conveyance but by virtue of the claim of adverse possession."

Their counterclaim was presented on the issue of adverse possession. The trial court made findings of fact and conclusions of law on this issue as follows:

". . . [T]he defendant Werth claimed title only under the description in · his deed from Oscar Geyer, dated April 10, 1937, as shown by the abstract.

"P. A. Werth testified that he apparently assumed that the description in his deed carried to the fence line south of the old roadway. From the evidence in the description contained in defendant Werth's deed to the Werth land, it contains an ambiguity in one respect. From the description it cannot be determined whether the curve which forms one of the boundary lines, bends toward the northwest of the quarter section or in the opposite direction. The direction of the bend cannot be determined from the two fixed terminal points as shown by the description. All other necessary points in the description are clear, and evidence is clear from all parties and undisputed by no one that the bend of the curve bends towards the northwest corner of the section.

"So, with that from the evidence the description contained in the deed is definite in every respect and any qualified engineer, knowing the direction of the bend of that curve, can determine the exact location of the boundary line of both the Werth property and the property described in the deed held by the plaintiff trustees.

"The court finds that the defendant Werth acquired no land by adverse possession. . . ."

The present action was commenced in May 1964. Our statute relating to adverse possession (K. S. A. 60-503) does not apply. Under the provisions of the prior statute (G. S. 1949, 60-304 [Fourth]) this court has held adverse possession must be actual, visible, exclusive and continuous for fifteen years (*Shaw v. Bandel,* 122 Kan. 343, 346, 251 Pac. 1086) and possession is not adverse when there is a mistake as to a boundary line (*Wilson v. Pum Ze,* 167 Kan. 31, 204 P. 2d 723).

Adverse possession is a question of fact to be presented to and determined by the trier of facts. When the determination is so made, if based upon substantial competent evidence, it should be affirmed on appeal. (*Unruh v. Whorton,* 194 Kan. 32, 397 P. 2d 84.)

The majority opinion avoids the application of the foregoing rules by holding the stipulation was an admission of law and the defendants are not bound by the stipulation.

The stipulation of defendants as to the issue of adverse possession is not an admission of law, it relates to conduct of the trial and should limit and govern both counsel and the court.

K. S. A. 60-216 authorizes pre-trial procedure limiting the issues for trial. This court has held a limitation on issues when agreed to in a pre-trial order should control the subsequent course of the action unless the order is modified to prevent manifest injustice. (*Brown v. Hardin,* 197 Kan. 517, 519, 419 P. 2d 912.)

The case cited by the majority, *The People v. P., Ft. W. & C. Ry. Co.,* 244 Ill. 166, 91 N. E. 48, relates to an admission of the legal effect of a city ordinance. There the admission was set forth in the defendant's answer. Defendant alleged the ordinance required a reverter of fee title to an abutting property owner when a street was vacated. The admission clearly related to a matter of law. The pleader could not bind the court by his own erroneous construction of the effect of the city ordinance. That case has no application to the stipulation of issues in the present case.

The majority of the court view the evidence introduced by plaintiff in answer to the counterclaim as an attempt to reform defendants' deed. I view it as an attempt to show why defendants' title based upon such deed did not include the area of the disputed roadway.

Plaintiff asked for a decree quieting his own title to the area of land described in his deed. It is admitted the legal descriptions in plaintiff's complete chain of title included the area in dispute, the curved roadway. The evidence in support of plaintiff's chain of title included deeds from the common grantor, Winters, and H. Schwaller and Sons, Inc. Abstracts of title were received in evidence covering both the Werth property (Jt. Ex. 5) and the plaintiff's property (Jt. Ex. 6).

This evidence clearly established, and all parties agreed, the discrepancy was in the description of land contained in the Werth deed, not in the church deed.

If reformation of any deed was sought in the court below it related to the Werth deed and failure to obtain reformation of that deed would not affect plaintiff's rights. The statute of limitations as to reformation applies to both parties and neither should be granted rights of reformation on appeal.

As I understand the majority opinion the process by which defendants' title to the abandoned roadway is quieted follows this chain of reasoning. The description of land in the defendants' deed encompassed all land within a convex arc with a radius of 426 feet from a radiant point on the northwest corner of the section. This would include all land claimed by Werth, plus most of the land claimed by the church and plus two tracts lying east and south of the church property. (See area in plat bounded by points A, B, Y, D.) Such a construction of the description in the Werth deed was never urged on the trial court or on this court. This construction of the description is arrived at by placing emphasis on the word *intersect* and by using, what is termed, a fundamental rule of geometry. In the application of such a rule this court overlooks that the legal description does not locate an established radiant point, it does not say the section line is tangent to the arc made by the radius and it does not establish a 90° angle at the northwest corner of the section.

Clearly a conveyance of this area circumscribed by points A, B, Y, D on the plat was never intended by Mr. Winters, the grantor, or by Ellis County, the grantee, when the deed was executed. At that time (1932) the curved road was being maintained by the county and was being used by the public. The fence which enclosed the Winters land was not moved. The tenant continued to farm up to the fence line which included more than half of the area circumscribed by points A, B, Y, D. All subsequent owners of the land, two different engineers who made surveys and the trial judge considered this description to include the area on the plat bounded by points A, B, X, D and lying outside of the Winters fence.

The second step in the process used by the court to quiet defendants' title to the abandoned roadway is to take from the defendants all the additional area granted to them by the construction of the description in the deed except the abandoned roadway. The legal basis by which this is accomplished is not entirely clear since the plaintiff made no claim of adverse possession or of boundary by agreement.

In the opinion it is stated the testimony of P. A. Werth constitutes an admission against interest which is binding upon the defendants.

The court then says, "The testimony of Mr. Struble *suggests an agreement* (emphasis added) between Henry E. Winters and Ellis

County to fix the boundary . . . along the fence line laid out by the county engineer of Ellis County and constructed by Mr. Struble, the tenant of Mr. Winters."

However, the line referred to was laid out and the fence was constructed in 1926. The deed by which the county received title to the triangular tract was executed and delivered six years later in 1932. In 1926 there was no provision in our law for an oral conveyance of land. (See R. S. 1923, 67-205.) Therefore, this fence line was established when Henry E. Winters owned the land on both sides of the curved roadway.

The law in Kansas as set forth in *Wagner v. Thompson*, 163 Kan. 662, 186 P. 2d 278, and *In re Moore*, 173 Kan. 820, 252 P. 2d 875, indicates a fence line does not become a true boundary in the absence of an express agreement by the adjoining landowners.

In the present case both tracts were owned by one person at the time the fence was installed and there was no evidence in the record to establish an express agreement by adjoining landowners for a true boundary.

The court should not substitute its judgment for that of the trial court. A decree should not be entered quieting title when the legal description of the real estate affected thereby is indefinite and ambiguous, for such a decree will result in confusion and further litigation. I would affirm the judgment of the trial court.

FATZER, J., joins in the foregoing dissent.